IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DASHA LONG, Individually and on behalf
of her minor children, M.L., and L.L.,
as mother and general guardian

    *Plaintiffs*

v.

GABLES RESIDENTIAL SERVICES, INC.

and

BERKSHIRE APARTMENTS, LLC

    *Defendants.*

Case No. 1:21-cv-00881

## BERKSHIRE APARTMENTS, LLC'S REPLY MEMORANDUM

Defendant Berkshire Apartments, LLC [Berkshire], by counsel, replies to Plaintiff's Opposition to Defendant's motion for summary judgment on the Amended Complaint.

### Plaintiff Failed to Submit Any Evidence to Establish a Disputed Issue of Fact

Plaintiff failed to meet her burden to survive summary judgment:

> In order to survive a motion for summary judgment, the non-moving party must present more than mere conclusory allegations." *Teru Chang v. Inst. for Public-Private P'ships, Inc.*, 846 A.2d 318, 323 (D.C. 2004) (citation omitted). "There is no issue for trial unless there is sufficient **evidence** favoring the nonmoving party for a jury to return a verdict for that party." *Brown v. George Wash. Univ.*, 802 A.2d 382, 385 (D.C. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)). "[A] party opposing a motion for summary judgment must produce at least enough **evidence** to make out a *prima facie* case." *Joeckel v. Disabled Am. Veterans*, 793 A.2d 1279, 1281-82 (D.C. 2002).

*Va. Acad. of Clinical Psychologists v. Group Hospitalization & Med. Servs.*, 878 A.2d 1226, 1233 (D.C. 2005). The evidence must be in the form of an affidavit or discovery responses that would be admissible in evidence at trial. If a party fails to properly support an assertion of fact or

1

fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

**(1)** give an opportunity to properly support or address the fact;

**(2)** consider the fact undisputed for purposes of the motion;

**(3)** grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or

**(4)** issue any other appropriate order.

Fed R Civ Pro 56

      Plaintiff contends there is an issue of fact over whether any of the people working at the apartment building are employees of Berkshire, but she offers no evidence to support her contention. To the contrary, she argues that Berkshire entered a contract with Gables Residential Services [Gables] to manage the building, presumably suggesting that whoever signed the management agreement must have been employed by Berkshire. But the managing member of a single purpose LLC can enter a contract. Simply put, the owner contracted with Gables to manage the building. All people working there are employed by Gables.

      Indeed, not one of the Counts in the Amended Complaint assert a claim against Berkshire. Each Count is captioned as being made against Gables alone. "At all relevant times, when The Berkshire staff interacted with Ms. Long, they did **as agents of Gables** and within the scope of their employment as The Berkshire property management staff." Am. Compl. at 102. Thus, The Berkshire refers to the apartment building, not the Defendant Berkshire. There is no evidence Berkshire exercised any control over the employees of Gables. Traditional standards of agency principles are upheld when considering liability under the Fair Housing Act. *See Meyer v. Holley*, 537 U.S. 280, 291, 123 S. Ct. 824, 832 (2003).

In *Gainor v. Optical Soc'y of Am., Inc.*, 206 F. Supp. 3d 290 (D.D.C. 2016), cited by Plaintiff, the actor was an employee of the defendant. The issue was whether she was acting within the scope of her employment. In *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 759 (D.C. 2001) Safeway obtained summary judgment because there was no evidence presented to create an issue over there was a basis to find Safeway liable on a *respondeat superior* theory for the acts of a contracted security guard. The relationship is even more remote here because Berkshire has no one working on site.

"The mere existence of *some* alleged factual dispute between the parties" will not defeat summary judgment; 'the requirement is that there be no *genuine* issue of *material* fact.'" *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. App. 2006) (citing *Anderson*, 477 U.S. at 247-48). The cases cited and arguments in Plaintiff's Opposition make clear there is no genuine issue of material fact. Berkshire has no employees and cannot be liable for the conduct of Gables employees.

### The Cases Cited by Plaintiff Are Inapposite

Plaintiff relies on cases involving sexual assaults in custodial settings. *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856 (7th Cir. 2018) involved a residential community providing custodial care to elderly tenants. Certain residents repeatedly assaulted plaintiff and her assistive walking devices, making derogatory slurs. Their discriminatory intent was clear from the words used. But that was not all. The evidence showed plaintiff was barred from common areas, her cleaning services were stopped, and she was physically assaulted by a member of the staff.

In *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67 (2nd Cir. 2021), the Second Circuit, sitting *en banc*, noted that a management company's deliberate indifference to discrimination in custodial settings may state a plausible claim because they can exert control over people in their custody, unlike over free adults:

> In an apparent attempt to avoid the obligation to plead facts that plausibly support an inference that the KPM Defendants were motivated by racial animus, [Plaintiff] Francis asserts that his allegations establish that the KPM Defendants intentionally discriminated against him under a deliberate indifference theory of liability. This theory of liability has been applied almost exclusively in custodial environments such as public schools and prisons, where it is clear that the defendant has both "substantial control over the context in which harassment occurs" and "a custodial [power over the harasser] . . . permitting a degree of supervision and control that could not be exercised over free adults."

*Id.* at 74, 2021 U.S. App. LEXIS 8761, *9-10, 2021 WL 1137441. Even in the custodial setting, the *Wetzel* court noted, "[h]ad the management defendants done nothing but listen, we might have a more limited case. *Wetzel* 901 F.3d at 860.

The *Wetzel* court also noted that the discriminatory actions were 'both severe and pervasive.' The actions of the residents went far beyond 'mere rudeness' and the court emphasized these statutes are not meant to be 'a general civility code' but a protection against deliberate discrimination. The severe and pervasive behavior of the tenants in *Wetzel,* taken together with the deliberate indifference to it and the abuse by the management employees make this case easily distinguishable.

The Amended Complaint mentions only two instances when the police were called to her apartment to check on the welfare of an infant crying for hours at night. Tenants are free to contact the police. The police investigate complaints on their own without direction from management or tenants. Plaintiff voluntarily agreed to the lease which allows a right of entry in emergencies. Her belief the police response was not needed does not create a cause of action or provide a plausible case for liability of either Defendant.

### A Landlord is Not Responsible for Resolving Tenant Disputes

Plaintiff also emphasizes HUD's guidance regarding landlord liability. 81 Fed. Reg. Vol. 178, 63054 (Sept. 14, 2016). The guidance specifically notes that "not every quarrel among

neighbors amounts to a violation of the Fair Housing Act." *Id.* at 63069. HUD outlines the burden on Plaintiff. First, she must prove that "the third-party **created** a hostile environment" for the plaintiff or complainant. The Amended Complaint fails on this first tier. Plaintiff alleges a single unnamed resident making a racially discriminatory comment, and then banging on the wall, and ultimately calling the police, with concerns over her infant crying for hours at night. While impolite, this conduct does not create a hostile environment.

Her claim fails on the third prong as well. "The housing provider failed to take prompt action to correct and end the harassment while having the power to do so." Berkshire is not empowered to stop a tenant from calling 911. Neighbors who are not sympathetic to a crying infant do not create a cause of action.

Plaintiff's gripe is with her neighbor, not the management company. While some may disagree with the extent of the decision in *Francis v. Kings Park Manor, Inc.*, 91 F. Supp. 3d 420 (E.D.N.Y. 2015), the case was extensively briefed with participation of many *amici* was upheld on appeal. *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67 (2d Cir. 2021).

## CONCLUSION

Federal and state laws meant to protect individuals from intentional discrimination do not impose a code of civility or require landlords to police interactions or resolve disputes between neighbors. Even if they did, Berkshire could not be liable for the acts of Gables. Plaintiff failed to provide any evidence to support a contrary finding of fact. Accordingly, Berkshire respectfully requests that the Court enter summary judgment in its favor.

Respectfully submitted,

JORDAN COYNE LLP

                                                                            /s/

D. Stephenson Schwinn, DC #358825
10201 Fairfax Boulevard, Suite 520
Fairfax, Virginia 22030
(703) 246-0900
Fax: (703) 591-3673
s.schwinn@jocs-law.com
*Counsel for Berkshire Apartments, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was filed and served through the Court's CM/ECF system and via email this 20 day of September, 2021 upon:

    Catherine Cone, Esquire
    Brook Hill, Esqurie
    Washington Lawyers' Committee for Civil
    Rights and Urban Affairs
    700 14th Street, NW, Suite 400
    Washington, DC 20005
    Catherine_cone@wash law.org
    Brook_hill@washlaw.org
    *Counsel for Plaintiffs*

    Brian D. Koosed, Esquire
    Amy J. Eldridge, Esquire
    K&L Gates, LLP
    1601 K Street NW
    Washington, D.C. 20006
    brian.koosed@klgates.com
    amy.eldridge@klgates.com
    *Counsel for Plaintiffs*

    Eric J. Pelletier, Esquire
    Anders T. Sleight, Esquire
    Offit Korman, P.A.
    7501 Wisconsin Avenue, Suite 1000W
    Bethesda, Maryland 20814
    Telephone: 240-507-1700
    epelletier@oflitkurman.com
    anders.sleight@offitkunnan.com
    *Counsel for Defendant Gables Residential*
    *Services, Inc.*

/s/ D. Stephenson Schwinn
D. Stephenson Schwinn