# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Dasha Long, M.L., and L.L.,** ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | |
| v. ) | **Case No.  1:21-cv-00881-EGS** |
| ) | |
| **Gables Residential Services, Inc., et al.** ) | |
| ) | |
| *Defendants.* ) | |

## REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT
## GABLES RESIDENTIAL SERVICES, INC.'S
## <u>MOTION TO DISMISS PURSUANT TO FED. R. CIV. P 12(b)(6)</u>

Eric Pelletier (D.C. Bar No. 454794)
Anders T. Sleight (D.C. Bar No. 1019232)
**Offit Kurman, P.A.**
7501 Wisconsin Avenue, Suite 1000W
Bethesda, Maryland 20814
Telephone: 240-507-1700
Fax: 240-507-1735
Email: epelletier@offitkurman.com
      anders.sleight@offitkurman.com
*Counsel for Defendant*
*Gables Residential Services, Inc.*

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.    PLAINTIFFS' HOSTILE HOUSING ENVIRONMENT
       CLAIMS FAIL BECAUSE THERE IS NO ALLEGATION
       GABLES COULD CONTROL THE BEHAVIOR OF
       THIRD-PARTY TENANTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

       A.     HUD REGULATIONS SUPPORT GABLES' POSITION. . . . . . . . . . . . . . . . . 2

              1.     *WETZEL* IS INAPPOSITE AND DISTINGUISHABLE. . . . . . . . . . . . . .3

              2.     *FRANCIS* IS ANALOGOUS AND SHOULD GOVERN. . . . . . . . . . . . . 5

III.   PLAINTIFFS' RETALIATION CLAIM FAILS
       BECAUSE THERE IS NO ALLEGATION OF
       AN ADVERSE ACTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

IV.    PLAINTIFFS' ALLEGATIONS OF DISCRIMINATION
       OR MAKING HOUSING UNAVAILABLE ON THE BASIS
       OF FAMILIAL STATUS AND/OR RACE FAIL FOR
       WANT OF ALLEGATIONS THAT MS. LONG WAS
       DENIED HOUSING OR RECEIVED DIFFERENT
       CONDITIONS OR PRIVILEGES RELATING TO
       HOUSING ON THE BASIS OF HER RACE OR FAMILIAL STATUS. . . . . . . . . . . . .9

       A.     THE EXPRESS TERMS OF 42 U.S.C. § 3604(A)
              AND INTERPRETIVE REGULATIONS MAKE
              CLEAR THAT PLAINTIFFS CANNOT STATE
              A CLAIM FOR UNAVAILABILITY OF HOUSING. . . . . . . . . . . . . . . . . . . . .9

       B.     THERE ARE NO ALLEGATIONS TO SUPPORT
              PLAINTIFFS' CLAIM UNDER 42 U.S.C. § 3604(B) . . . . . . . . . . . . . . . . . . . . 11

V.     PLAINTIFF'S CLAIM UNDER 42 U.S.C. § 1981 FAILS
       BECAUSE THE COMPLAINT DOES NOT SPECIFY
       WHICH RIGHTS PLAINTIFF SEEKS TO ENFORCE
       OR THE RACE OF THE ALLEGEDLY HARRASING NEIGHBOR. . . . . . . . . . . . . . 12

VI.    THE COURT SHOULD DISMISS THE NEGLIGENCE CLAIM. . . . . . . . . . . . . . . . . 13

       A.     MS. LONG'S THREADBARE ALLEGATIONS
              OF NEGLIGENCE DO NOT SATISFY *IQBAL* AND *TWOMBLY*. . . . . . . . . . .13

B.      ASSUMING ARGUENDO THAT ORAL
        REPAIR REQUESTS WERE PERMISSABLE,
        DEFENDANTS STILL HAD NO NOTICE OF
        A DANGEROUS CONDITION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

C.      AS A MATTER OF LAW, GABLES OWED
        NO DUTY TO PLAINTIFF BECAUSE IT WAS
        NOT FORESEEABLE THAT THE CONDITION
        LEADING TO MS. LONG'S ROUTINE CLOSET
        DOOR REPAIR WOULD LEAD TO AN INJURY. . . . . . . . . . . . . . . . . . . . . . .16

D.      GABLES VIOLATED NO MUNICIPAL REGULATIONS. . . . . . . . . . . . . . . .17

VII.    PLAINTIFF'S CONTRACT CLAIM FAILS FOR WANT OF DAMAGES. . . . . . . . . . .20

VIII.   AS A MATTER OF LAW, THE MPD's WELLNESS
        CHECK WAS AN EMERGENCY, AND WAS A
        PERMISSIBLE ENTRY UNDER THE LEASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

IX.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**TABLE OF AUTHORITIES**

<u>CASES</u>                                                                                            <u>PAGE</u>

*2922 Sherman Ave. Tenants' Ass'n v. District of Columbia,*
    370 U.S. App. D.C. 328, 444 F.3d 673, (D.C. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . .10, 11

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (U.S. May 18, 2009). . . . . . . . . . . 2, 13, 14, 20

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (U.S. May 21, 2007). . . . . . . . . . 13, 14

*Blatt v New York City Housing Authority,*
    123 A.D.2d 591, 506 N.Y.S.2d 877 (N.Y.A.D. 2 Dept., 1986). . . . . . . . . . . . . . . . . . . . . .5

*Clarke v. O'Connor,*
    140 U.S. App. D.C. 300, 435 F.2d 104 (D.C. Cir. 1970). . . . . . . . . . . . . . . . . . . . . . 18, 19

*Charles v. Home Depot, U.S.A., Inc.,*
    No. 16-CV-2054 (EGS), 2019 WL 95563 (D.D.C. Jan. 03, 2019). . . . . . . . . . . . . . . . . 15

*Chavez v. Aber,*
    122 F. Supp. 3d 581, 51 NDLR P 134, 2015 WL 4724807
    (W.D.Tex. Aug. 08, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Council on American-Islamic Relations Action Network, Inc. v. Gaubatz,*
    793 F. Supp. 2d 311 (D.D.C. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Democracy Partners v. Project Veritas Action Fund,*
    285 F. Supp. 3d 109 (D.D.C. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Domino's Pizza, Inc. v. McDonald,*
    546 U.S. 470, 126 S. Ct. 1246, 163 L. Ed. 2d 1069 (U.S. 2006). . . . . . . . . . . . . . . . . . .12

*Dixon v. The Hallmark Companies, Inc.,*
    627 F.3d 849, (11th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*\*Edstrom v St. Nicks Alliance Corp.,*
    149 N.Y.S.3d 26, 2021 N.Y. Slip Op. 03112 (N.Y.A.D. 1 Dept., 2021). . . . . . . . . . . 5, 6

*Favourite v. 55 Halley Street, Inc.,*
    381 F. Supp. 3d 266, 2019 WL 2226762 (S.D.N.Y. May 23, 2019). . . . . . . . . . . . . . . .7

*Findlay v. CitiMortgage, Inc.,*
    813 F. Supp. 2d 108, (D.D.C. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Francis v. Kings Park Manor, Inc.,*
  992 F.3d 67, 78 (2d Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 6

*Galabya v. New York City Bd. of Educ.,*
  202 F.3d 636, (2nd Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gould v. DeBeve,*
  117 U.S. App. D.C. 360 (D.C.Cir. 1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n,*
  388 F.3d 327 (7th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Hedgepeth v. Whitman Walker Clinic,*
  22 A.3d 789 (D.C. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Morton v. Kirkland,*
  558 A.2d 693 (D.C. May 24, 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 5

*Nanko Shipping, USA v. Alcoa, Inc.,*
   428 U.S. App. D.C. 87,  850 F.3d 461 (D.C. Cir. 2017). . . . . . . . . . . . . . . . . . . . . 12, 13

*Parr v. Ebrahimian,*
  70 F. Supp. 3d 123 (D.D.C. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Potomac Electric Power Company v. Washington Metropolitan Area Transit Authority,*
  No. 19-CV-2709 (DLF), 2020 WL 3429738 (D.D.C. June 22, 2020). . . . . . . . . . . . . .14

*Regional Economic Community Action Program, Inc. v. City of Middletown,*
  294 F.3d 35, (2d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Tsintolas Realty Co. v. Mendez,*
  984 A.2d 181 (D.C. Nov. 25, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Wetzel v. Glen St. Andrew Living Community, LLC,*
  901 F.3d 856, 859 (7th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 4, 5, 6

*Wharf, Inc. v. District of Columbia,*
  133 F. Supp. 3d 29 (D.D.C. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Wright v. Howard University,*
  60 A.3d 749 (D.C. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Youssef v. 3636 Corp.,*
  777 A.2d 787 (D.C. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 19

**STATUTES**

42 U.S.C. § 1981. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

42 U.S.C. § 3604. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10, 11, 12

42 U.S.C. § 3617. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

D.C. Code § 1-327.56a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

D.C. Code § 22-1319. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

**REGULATIONS**

24 C.F.R. § 100.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

24 C.F.R. § 100.60. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

24 C.F.R. § 100.65. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

D.C. Mun. Regs. tit. 14, § 301.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

D.C. Mun. Regs. tit. 14, § 705. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

D.C. Mun. Regs. tit. 14, §806.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

**OTHER**

Fed. R. Civ. P. 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Housing Discrimination Law and Litigation* § 20:5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Defendant Gables Residential Services, Inc. ("Gables"), by counsel, respectfully submits this memorandum in reply to the opposition to Gables' Motion to Dismiss filed by Plaintiffs Dasha Long ("Ms. Long") and her minor children M.L. and L.L. (collectively, "Plaintiffs").

## I.   <u>INTRODUCTION</u>

Plaintiffs filed a thirteen-count lawsuit against a property management company (Gables) and their landlord the Berkshire Apartments, LLC (the "Berkshire") based on sundry claims of discrimination and negligence perpetuated by either third parties or Ms. Long herself.  Rather than attempting to explain why they believe their claims are legally adequate, Plaintiffs' Opposition to Gables' Motion to Dismiss devotes its first nine pages to reiterating, summarizing, realleging (and at times, conveniently recharacterizing) the allegations of their Amended Complaint.  However, this needless redundancy does not improve Plaintiffs' claims, or increase the number of incidents (all of which are not actionable) at issue.  Instead, it merely underscores that Plaintiffs' federal lawsuit is based on a small number of alleged incidents, and that it is overkill.

Plaintiffs' civil rights and discrimination claims are based on a flawed premise.  That is, Plaintiffs repeatedly assert through the Complaint and their Opposition to Gables' Motion to Dismiss (the "Opposition") that Gables was vested with police power to control the behavior of third-party tenants acting largely within the confines of their own homes.  Yet a review of the parties' lease, which was attached to the Complaint, reveals that Gables holds no power or means by which to control tenant behavior or intervene in disputes between tenants.  Furthermore, Plaintiffs have cited no controlling legal authority, statute, or regulation that would require Gables to act as a police force between and among tenants within the building it manages.  The law is to the contrary.  *See Morton v. Kirkland*, 558 A.2d 693, 695 (D.C. 1989) ("A landlord is not obliged to institute eviction proceedings whenever a tenant accuses another tenant of harassment.").

## II. PLAINTIFFS' HOSTILE HOUSING ENVIRONMENT CLAIMS FAIL BECAUSE THERE IS NO ALLEGATION GABLES COULD CONTROL THE BEHAVIOR OF THIRD-PARTY TENANTS

### A. HUD REGULATIONS SUPPORT GABLES' POSITION

Plaintiffs' Opposition relies on regulations promulgated by the Department of Housing and Urban Development ("HUD") in attempting to impute liability to Gables based on actions of third-party tenants.  Opp. at 6.  However, Plaintiffs do not quote in full the applicable HUD regulation, 24 C.F.R. § 100.7(a)(iii), which states as follows:

> Failing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it. *The power to take prompt action to correct and end a discriminatory housing practice by a third-party depends upon the extent of the person's control or any other legal responsibility the person may have with respect to the conduct of such third-party.*

24 C.F.R. § 100.7(a)(iii) (emphasis supplied).

There are no specific allegations within the Complaint from which this Court could infer that Gables has the power or means to control third parties.  Moreover, Plaintiffs have not cited any legal authority that imposes upon Gables the power to control the behavior of third parties.  Instead, Plaintiffs merely allege, in conclusory fashion in one phrase, that Gables "had the authority" to "put an end to the neighbor's unreasonable actions towards Ms. Long."  Am. Compl. ¶35.  To support their claims which are predicated on these regulations, Plaintiffs must allege what power, if any, Gables allegedly possesses to control third parties.  24 C.F.R. § 100.7(a)(iii).  Yet the Complaint makes no such allegations besides the naked assertion stated in Paragraph 35 of the Complaint. This Court is not required to accept as true "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting Twombly, 550 U.S. at 557).

1.    ***WETZEL* IS INAPPOSITE AND DISTINGUISHABLE**

Plaintiffs' Opposition relies heavily on the Seventh Circuit's decision in *Wetzel v. Glen St. Andrew Living Community, LLC*. Plaintiffs posit that *Wetzel* (a panel decision) supports the proposition that Gables should be held liable for the allegedly discriminatory conduct of third-party tenants. However, *Wetzel* bears significant factual distinctions between the allegations stated in *Wetzel* and those the Plaintiffs have alleged in this case, and it does not aid their cause.

In *Wetzel*, the plaintiff was a resident of a residential community for older adults, where the landlord served residents three meals per day in a common, central location. *Wetzel v. Glen St. Andrew Living Community, LLC*, 901 F.3d 856, 859 (7th Cir. 2018). The resident alleged that fellow residents verbally abused and berated her based upon her sexuality and gender, and physically abused her in common areas. She also alleged specific, direct acts of retaliation allegedly committed by the landlord. *Id.*

For example, the plaintiff in *Wetzel* alleged the landlord "barred her from the lobby except to get coffee and they halted her cleaning services, thus depriving her of access to areas specifically protected in the Agreement." *Id.* Because the acts of discrimination and physical abuse occurred in common areas under the landlord's control, the Seventh Circuit reversed the district court's decision to grant defendants' motion to dismiss. *Id.* Importantly, the Seventh Circuit declined to base its ruling on HUD's rules, as plaintiff had sought, because it determined "HUD's rule mirrors the scope of employee liability under Title VII for employee-on-employee harassment," and "there are salient differences between Title VII and the FHA." *Id.* at 866.

The facts alleged in *Wetzel* differ substantially from those in the case at bar. *Wetzel* involved an older adults community, in which the landlord served the residents three meals per day many of whom required the assistance of walkers, wheelchairs and scooters. The residents

necessarily relied on their landlord for basic living needs (food) and support.  As a result, the landlord in *Wetzel* had more direct and indirect control over its tenants, similar to a school.

The Berkshire is not an older adults community where tenants require and receive extensive support and assistance.  Rather, the Berkshire is an "upscale" "multi-unit residential building" that consists of mixed residents.  Am. Compl. ¶¶3, 14(b).  Furthermore, Gables neither provides meals to the tenants nor ancillary services such as cleaning.  The relationship between Gables and the tenants is strictly an arms-length relationship.  Am. Compl. ¶¶2-4.

Also, *Wetzel's* alleged acts of discrimination and harassment occurred principally in common areas, over which the landlord exercised control.  In stark contrast, this case involves allegedly discriminatory actions that took place within Plaintiffs' apartment, or through the walls, or via phone calls to the police, all of which were allegedly perpetuated by Plaintiffs' neighbor, *from inside the neighbor's apartment*.  Am. Compl. ¶¶32, 34, 36.  And, the *Wetzel* landlord's own staff engaged in discriminatory actions themselves: "Early one morning two staff members woke Wetzel up and again accused her of smoking in her room.  When she said that she had been sleeping, one of them slapped her across the face."  *Wetzel*, 901 F.3d at 860.

Finally, and perhaps most important of all, the lease in *Wetzel* allowed the landlord to evict any tenant who "engages in acts or omissions that constitute a direct threat to the health and safety of other individuals" or who "engage[s] in any activity that [landlord] determines unreasonably interferes with the peaceful use and enjoyment of the community by other tenants."  *Wetzel*, 901 F.3d at 865.  The lease that Gables entered with Ms. Long reserves no such powers to Gables.  *See* ECF No. 2, ¶27 "Default by Tenant" and "Eviction."

For these reasons, the Plaintiffs' reliance on the Seventh Circuit's decision in *Wetzel* is misplaced. This Court should not follow the *Wetzel* Court's reasoning because of the substantial differences between the allegations in that case and those present in the case at bar.

## 2. *FRANCIS* IS ANALOGOUS AND SHOULD GOVERN

In *Francis v. Kings Park Manor, Inc.*, the Second Circuit specifically analyzed and distinguished *Wetzel* in determining that a landlord could not be held liable for the discriminatory actions of third-party tenants. *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 78 (2d Cir. 2021). In support of its holding, the *Francis* Court reasoned that there were no allegations that the landlord "had a similarly unusual degree of control over the premises and tenants, or actively facilitated or compounded harm" to the plaintiff that would justify the imposition of liability, as the Court did in *Wetzel*. *Id.* Furthermore, the Second Circuit explained that although a tenant's breach of the terms of a lease might allow a landlord to terminate a lease, it does not confer upon the landlord any ability to control a tenant. *Id. See also Morton, supra.*, 558 A.2d at 695 (recognizing limited duty to control tenant actions against other tenants); *Blatt v. New York City Hous. Auth.*, 506 N.Y.S.2d 877 (N.Y. App. Div. 2d Dept. 1986) (finding no duty for a landlord to protect a tenant "from the criminal acts of yet another tenant, since it cannot be said that the landlord had the ability or a reasonable opportunity to control.").

Following the Second Circuit's decision in *Francis*, New York's Supreme Court, Appellate Division, affirmed the dismissal of a tenant's FHA and state law discrimination claims based on similar allegations to those raised by Plaintiffs in this case. *Edstrom v. St. Nicks All. Corp.*, 149 N.Y.S.3d 26, 27 (N.Y. App. Div. 1st Dept. 2021). The Plaintiff in Edstrom alleged that "his landlord failed to respond to reports of sexual-orientation and race-based harassment by a fellow tenant." *Id.* In other words, the plaintiff in *Edstrom* made the very same claims and raised the

same theory of liability that Plaintiffs raise here.  The *Edstrom* Court agreed with the Second Circuit's observation in *Francis* that "[t]he typical powers of a landlord over a tenant – such as the power to evict – do not establish the substantial control necessary to state a deliberate indifference claim under the FHA…" particularly because a landlord-tenant relationship in question was merely a "typical[] arm's length relationship."  From this, the *Edstrom* court held that the tenant failed to state a claim under the FHA because it did not allege a basis with which the Court could infer that the landlord "had substantial control over the alleged harasser."  *Id.*

The distinctions between the instant case and the allegations in *Wetzel* are stark.  In this case, Plaintiffs allege they "were subjected to unwelcome, pervasive, and severe conduct from their next-door neighbor."  Opposition at 16.  There are no allegations within the Amended Complaint from which this Court could conclude or infer that Gables possesses any ability to control the behavior of tenants within the confines of their own homes.  By contrast, the harassing behavior in *Wetzel* was perpetuated by third party tenants in the common areas and by the landlord itself.  *Wetzel*'s significant distinctions from the facts render it all but worthless for purposes of analyzing Ms. Long's Amended Complaint.  Instead, the Court should follow *Francis* because it is factually analogous, it is well-reasoned, and, because it is an *en banc* decision (reversing a panel decision no less), it has undergone more rigorous analysis than the panel decision in *Wetzel*.

## III.   PLAINTIFFS' RETALIATION CLAIM FAILS BECAUSE THERE IS NO ALLEGATION OF AN ADVERSE ACTION

With respect to Plaintiffs' retaliation claims under the FHA, the parties agree that Plaintiffs must plead sufficient facts to show Plaintiffs were: (1) engaged in protected activity; (2) Gables took adverse action against the Plaintiffs; and (3) that a causal connection exists between the Plaintiffs' protected activity and the adverse action, "*i.e.*, that a retaliatory motive played a part" in the adverse action.  *Regl. Econ. Community Action Program, Inc. v. City of Middletown*, 294

F.3d 35, 54 (2d Cir. 2002).  When reviewing retaliation claims predicated on 42 U.S.C. § 3617, courts have held that discriminatory animus is an essential element of a retaliation claim. *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 280 (S.D.N.Y. 2019) (dismissing a retaliation claim where the record did not show any evidence of intentional discrimination against the plaintiff).  *See also Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 858 (11th Cir. 2010) ("To establish a claim for retaliatory housing discrimination, the [Plaintiffs] must assert that [Defendant] "coerce[d], intimidate[d], threaten[ed], or interfere[d] with" their exercise of rights granted under § 3604(b).").

Plaintiffs' retaliation claims fail because there are insufficient allegations by which this Court can conclude Gables subjected Plaintiffs to adverse action.  An adverse action "must be sufficiently harmful to deter a reasonable person in the plaintiff's circumstances from engaging in the protected activity." *Housing Discrimination Law and Litigation* § 20:5.

In evaluating whether Plaintiffs sufficiently alleged adverse action, this Court should consider *Chavez v. Aber*, 122 F. Supp. 3d 581 (W.D. Tex. 2015).  In *Chavez*, the plaintiffs alleged defendants responded to their accommodation request by "engaging in 'relentless hostility and harassment' against Plaintiffs, including filing suits for eviction, calling the Animal Control Services, and refusing to offer Plaintiffs a renewed lease on terms similar to non-disabled tenants in the complex." *Id.* at 600.  Due to the pervasive allegations and direct acts of interference by the defendants, the *Chavez* Court found the plaintiffs sufficiently alleged an adverse action to state a retaliation claim under 42 U.S.C. § 3617.

In contrast to *Chavez*, and even viewed in the light most favorable to the Plaintiffs, the Complaint and Opposition in this matter fail to specify what, if any, adverse action Gables perpetuated against Plaintiffs in retaliation for their retention of counsel.  For instance, Plaintiffs

allege Gables retaliated against Ms. Long by "requiring her, *at certain times*, to seek the assistance of her counsel to place non-emergency repair and other services requests."  Am. Compl. ¶76 (emphasis supplied).  Plaintiffs admit that not all repair requests were required to be submitted with the assistance of counsel.  For example, the Amended Complaint alleges Ms. Long contacted her counsel in May 2020 (¶¶70-71) and July 2020 (¶75), but submitted her own repair requests in October, 2020 and January, 2021.  Am. Compl. ¶¶77, 79.  And, particularly because Ms. Long engaged *two sets* of lawyers to represent her, Gables' decision to involve its own lawyers to receive repair requests from Ms. Long's lawyers can hardly be said to be an adverse action motivated by illegal animus.  In other instances, Ms. Long admits she spoke to Gables regarding repair issues and requests and was not required to route her communications through counsel. Am. Compl. ¶¶77, 79.  Finally, to the extent that Ms. Long contends that her oral repair requests were not "timely" addressed, there are no facts pleaded to identify when repair requests were actually made, and how much time passed before the request was addressed before an incident resulted.  Am. Compl. ¶¶77, 79.

Courts addressing the sufficiency of adverse action in the context of employment retaliation claims have opined that a "plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment.  To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).  Ms. Long did not suffer any materially adverse change in the terms and conditions of her housing by using her attorneys to submit occasional non-emergency repair requests.  As a result, there are simply no specific allegations of facts rising to the level of

adverse action that would support a retaliation claim under 42 U.S.C. § 3617.  As such, this Court

must dismiss Plaintiffs' retaliation claim under 42 U.S.C. § 3617 for failure to state a claim.

IV.   **PLAINTIFFS' ALLEGATIONS OF DISCRIMINATION OR MAKING HOUSING UNAVAILABLE ON THE BASIS OF FAMILIAL STATUS AND/OR RACE FAIL FOR WANT OF ALLEGATIONS THAT MS. LONG WAS DENIED HOUSING OR RECEIVED DIFFERENT CONDITIONS OR PRIVILEGES RELATING TO HOUSING ON THE BASIS OF HER RACE OR FAMILIAL STATUS**

A.   **THE EXPRESS TERMS OF 42 U.S.C. § 3604(A) AND INTERPRETIVE REGULATIONS MAKE CLEAR THAT PLAINTIFFS CANNOT STATE A CLAIM FOR UNAVAILABILITY OF HOUSING**

Pursuant to 42 U.S.C. § 3604(a), it is unlawful for a landlord to " refuse to sell or rent after

the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make

unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status,

or national origin." 42 U.S.C. § 3604(a).  In this case, it is undisputed that Ms. Long was offered

and accepted the rental of an apartment at the Berkshire, and Ms. Long has resided at the Berkshire

from April 9, 2020 until at least the filing of the Amended Complaint on June 6, 2021.  Am. Compl.

¶¶9,11, 20.  There are no allegations in the Complaint that Ms. Long was not offered an apartment

or that Gables made her apartment unavailable or otherwise denied the apartment to Ms. Long.

Ms. Long remained in the Berkshire, despite the supposedly hostile housing environment,

until well past her notice of intent to vacate, which she delivered in November 2020.  Am. Compl.

¶¶9,11, 85-87.  Apart from the terms of 42 U.S.C. § 3604(a) itself, the regulations interpreting that

section of the FHA offer no help to Plaintiffs because according to the Amended Complaint, they

had not vacated the Berkshire.  Subsection (b)(7) of the regulation interpreting 42 U.S.C. § 3604(a)

states: "Subjecting a person to harassment because of race, color, religion, sex, handicap, familial

status, or national origin that *causes the person to vacate* a dwelling or abandon efforts to secure

the dwelling." 24 C.F.R. § 100.60(b)(7) (emphasis supplied).  Yet, Plaintiffs make clear that, by

the time this action was filed on June 6, 2021, Ms. Long had not vacated the Berkshire, even though she intended to do so as early as November 2020.  ECF No. 1.  For the foregoing reasons, and pursuant to the express terms of 42 U.S.C. § 3604(a) and the HUD regulations interpreting that section of the FHA, Ms. Long cannot state a claim against Gables for making housing unavailable.

Ms. Long's allegations are in sharp contrast to those raised in *2922 Sherman Ave. Tenants' Ass'n v. D.C.*, 444 F.3d 673, 685 (D.C. Cir. 2006).  *2922 Sherman Ave.* involved a group of hispanic plaintiffs that alleged that they were targeted for eviction by the District of Columbia. The District had posted notices inside their apartment buildings advising tenants to vacate their homes due to the allegedly uninhabitable conditions of their housing.  *Id.*  For instance, one group of tenants receive a notice stating as follows: "by order of the housing regulation administration this structure is declared unfit for human habitation and its occupancy and/or use is hereby prohibited."  *Id.*  Another group of tenants received notices advising them their building was "'unfit for human habitation'" and advising them 'to seek alternative housing accommodations.'"  *Id*. Based on the aggressive notices, the D.C. Circuit concluded that the apartment buildings were made unavailable to the tenants under the FHA because the tenants were either directed or advised to vacate their homes.  *Id.*

Plaintiffs' allegations in this case fall far short of those raised in *2922 Sherman Ave.* Plaintiffs do not allege that Gables or other tenants asked Plaintiffs to find other housing or to move out.  Instead, Plaintiffs allege they voluntarily left the building on a few occasions, the dates of which are unknown, and subsequently returned to the Berkshire, where Plaintiffs continued to reside until at least June 6, 2021.  Am. Compl. ¶¶7, 11, 88.  The suggestion that Gables made Ms. Long's apartment unavailable to her is outlandish and unsupported by the express terms of Plaintiffs' own complaint.  Plaintiffs' allegations of unavailable housing under the FHA simply do

not rise to the level found sufficient in *2922 Sherman Ave. Tenants' Ass'n v. D.C.*, and Plaintiffs' claim should be dismissed as a result.

### B.   THERE ARE NO ALLEGATIONS TO SUPPORT PLAINTIFFS' CLAIM UNDER 42 U.S.C. § 3604(B)

Pursuant to 42 U.S.C. § 3604(b), it is unlawful for a landlord to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."   However, there are no allegations in the Complaint that Gables denied Plaintiffs access to communal areas of the Berkshire or any facilities on the basis of race or familial status.   There are no allegations that Plaintiffs could not access areas such as the mail room or exercise room.   Moreover, there are no allegations that Gables refused to make repairs to Ms. Long's apartment on the basis of her race or familial status.

Ms. Long claims that Gables facilitated a neighbor's harassment of Plaintiffs or refused to curtail the neighbor's action, but (as discussed *supra*) Plaintiffs do not specifically allege what power Gables had to curtail the behavior of the neighbor, either under the terms of the lease or District of Columbia law.

Although Plaintiffs again cite the HUD regulation interpreting 42 U.S.C. § 3604(b), the regulation does nothing to save Plaintiffs claims under 42 U.S.C. § 3604(b).   24 C.F.R. § 100.65(b)(7) specifies that prohibited actions under 42 U.S.C. § 3604(b) include, "[s]ubjecting a person to harassment because of race, color, religion, sex, handicap, familial status, or national origin that has the effect of imposing different terms, conditions, or privileges relating to the sale or rental of a dwelling or denying or limiting services or facilities in connection with the sale or rental of a dwelling.   24 C.F.R. § 100.65.   There are no allegations, however, that Gables itself subjected Plaintiffs to harassment because of their race or familial status.

Finally, Plaintiffs have not pleaded any facts by which this Court could impute the behavior of Ms. Long's neighbor onto Gables, either by an agency theory or otherwise.  The Seventh Circuit has previously held that alleged discriminatory actions of third parties cannot form the basis for a claim for relief under 42 U.S.C. § 3604.  *Halprin v. Prairie Single Fam. Homes of Dearborn Park Ass'n*, 388 F.3d 327, 329 (7th Cir. 2004) (holding a homeowner failed to state a claim under 42 U.S.C. § 3604 against the plaintiff's homeowners' association based on harassing acts of other property owners).

For the foregoing reasons, and pursuant to the express terms of 42 U.S.C. § 3604(b) and the HUD regulations interpreting that section of the FHA, Plaintiffs do not state a claim against Gables for discriminatory terms, conditions or privileges in housing.

## V. PLAINTIFF'S CLAIM UNDER 42 U.S.C. § 1981 FAILS BECAUSE THE COMPLAINT DOES NOT SPECIFY WHICH RIGHTS PLAINTIFF SEEKS TO ENFORCE OR THE RACE OF THE ALLEGEDLY HARRASING NEIGHBOR

Gables does not contest Plaintiffs' recitation of the purpose of 42 U.S.C. § 1981.  It is worth noting, however, that claims asserted under 42 U.S.C. § 1981 are subject to the same pleading standards as "the familiar *McDonnell Douglas* rubric for alleging a *prima facie* case of purposeful employment discrimination."  *Nanko Ship.*, *USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017). In order to properly state a claim under 42 U.S.C. § 1981, a plaintiff must allege he or she "has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 470 (2006).  Yet, Ms. Long does not specifically allege which rights under the lease she seeks to enforce.  Rather, Ms. Long vaguely claims that Gables took no steps to "ensure Ms. Long's enjoyment of the rights provided in her Lease."  Am. Compl. ⁋142.  These allegations are not sufficient to state a claim under 42 U.S.C. § 1981.

Second, while Plaintiffs rely heavily on *Nanko Shipping* to claim that Plaintiffs have met their pleading burden under 42 U.S.C. § 1981, *Nanko Shipping* is distinguishable.  In *Nanko*, the plaintiff alleged that the defendant, aware of the plaintiff's owner's race, "treated the company he owns and operates less favorably than similarly situated white-owned companies."  *Id.*  However, as stated in Gables' opening Memorandum in support of its Motion to Dismiss, Ms. Long has not pleaded any facts that would show Gables itself treated Ms. Long less favorably than similarly situated tenants of different races.  Most importantly, the harassing neighbor's race is not identified or alleged anywhere within the Complaint.  Plaintiffs would have this Court *presume* that the neighbor is not African-American because the neighbor allegedly made a racist remark about Ms. Long's race to a Gables representative.  Am. Compl. ¶33.  There are simply no allegations with respect to the neighbor's race and this Court cannot infer that Gables treated Ms. Long differently based on her race because the Complaint does not give the Court any basis upon which it could conclude or infer that Ms. Long and the allegedly harassing neighbor are different races.

For the foregoing reasons, Ms. Long fails to state a claim for relief under 42 U.S.C. § 1981 and this Court must dismiss Count V of the Amended Complaint accordingly.

## VI.    THE COURT SHOULD DISMISS THE NEGLIGENCE CLAIM

### A.    MS. LONG'S THREADBARE ALLEGATIONS OF NEGLIGENCE DO NOT SATISFY *IQBAL* AND *TWOMBLY*

When the Opposition asserts that Gable's arguments about the negligence claim raise jury question(s) (pp. 33, 35-36), it puts the cart before the horse.  Plaintiffs' problem is a failure to plead facts, rather than a dispute over those facts.  That is, the Amended Complaint fails to state a claim for negligence that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although "detailed factual allegations" are not required, a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-

harmed-me accusation," *id.*, and must "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

To state a facially plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.* A complaint alleging "facts [that] are 'merely consistent with' a defendant's liability ... 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In support of their argument that that they have plead facts sufficient to raise jury questions on her negligence claim, Plaintiffs cite many (typically older) District of Columbia Court of Appeals cases, (Opp. at 35-36) which precede, and therefore do not apply *Iqbal* and *Twombly*. However, this is 2021, and federal court is Plaintiffs' chosen venue. Therefore, "[t]hreadbare recitals of the elements" of *res ipsa loquitur*, "supported by mere conclusory statements," cannot suffice to meet [*Iqbal* and *Twombly's*] requirement[s]." *Potomac Elec. Power Co. v. Washington Metro. Area Transit Auth.*, No. 19-CV-2709 (DLF), 2020 WL 3429738, at *2 (D.D.C. June 22, 2020). As Gables' opening Memorandum (pp. 24-26) argued, bald allegations that something bad allegedly happened, or that negligence is "in the air," or in the "abstract" do not suffice to state a negligence claim, and Plaintiff cannot invoke *res ipsa loquitor* to salvage it.

**B.     ASSUMING ARGUENDO THAT ORAL REPAIR REQUESTS WERE PERMISSABLE, DEFENDANTS STILL HAD NO NOTICE OF A DANGEROUS CONDITION**

In *Charles v. Home Depot, U.S.A., Inc.*, No. 16-CV-2054 (EGS), 2019 WL 95563, at *2 (D.D.C. Jan. 3, 2019), this Court wrote an opinion that expresses the legal implications of the key failing of Plaintiffs' negligence case, lack of notice of a "dangerous condition":

> the burden is on the plaintiff to prove that the defendant was negligent 'either in creating a *dangerous condition* or in allowing one to continue without correction and that this negligence was the proximate cause of the injuries. Moreover, when liability is predicated upon the existence of a *dangerous condition*, as here, it is necessary to show that the party against whom negligence is claimed *had actual notice of the dangerous condition* or that the condition had existed for such length of time that, in the exercise of reasonable care, its existence should have become known and corrected.

*Charles v. Home Depot, U.S.A., Inc.*, No. 16-CV-2054 (EGS), 2019 WL 95563, at *2 (D.D.C. Jan. 3, 2019) (internal citations omitted) (emphasis added).  *See also Youssef v. 3636 Corp.*, 777 A.2d 787, 794 (D.C. 2001) (stating that the law of the District Columbia requires that a landlord have notice, actual or constructive, of a hazardous condition and that a landlord be afforded a reasonable opportunity to correct it).

Here, Plaintiffs do not claim that the door was a "dangerous" or "hazardous" condition, that Gables either created, or allowed to persist.  To the contrary, they identify the door and their request for repair as an "example" of an item she describes as "routine" in nature. (¶¶77-78).  Plaintiffs take this tack to avoid the Lease requirement that her repair requests be in writing, and in doing so, point to the "Gables Policies & Regulations" which  states, "*routine* repair requests may be submitted to the office in person, via phone, email or Gables Gateway…."  ECF No. 2, p. 49 (emphasis added).

Even assuming for sake of argument that an oral repair request was permissible, with respect to the closet door, the Amended Complaint is completely nondescript and does not state

any facts indicating that there was anything about the condition of the door that was dangerous or hazardous, or that Plaintiffs advised Gables that the door's condition was hazardous, or likely to fall off the track.[1]   The arguments in Plaintiffs' Opposition (p.32) that now attempt to recharacterize the door as a "hazardous condition" do not rectify this failing of the Amended Complaint.  Instead, by Plaintiffs' choosing, the Amended Complaint is conspicuously vague with respect to whatever allegedly was wrong with the door, and equally vague on the timing between her alleged oral repair request and the moment when the door (apparently spontaneously) fell off the track and onto Ms. Long's eleven-month-old child.

### C.      AS A MATTER OF LAW, GABLES OWED NO DUTY TO PLAINTIFF BECAUSE IT WAS NOT FORESEEABLE THAT THE CONDITION LEADING TO MS. LONG'S ROUTINE CLOSET DOOR REPAIR WOULD LEAD TO AN INJURY

As currently pleaded, this case involves a "routine" (*see* Am. Compl. ¶¶8, 73, 81) repair request for a closet door that allegedly fell on Ms. Long's infant child for reasons that the Amended Complaint does not specify.  Plaintiffs' negligence claim is essentially one based on *res ipsa loquitor* because there is no allegation in the Amended Complaint that a dangerous condition existed, or even any description whatsoever regarding what supposedly was wrong with the door. Regardless, the question is whether the Amended Complaint states any facts to indicate whether it was foreseeable that the failure to make a routine closet door repair within the same week it was supposedly reported (or, possibly on the same day it was reported, *see* Am. Compl. ¶¶77-78) would lead to the risk at issue, *i.e.*, the door spontaneously falling on someone in the apartment.

> In general, courts rely on the concept of "foreseeability" to determine whether the defendant owed a duty to the claimant in a negligence action and examine whether the risk to the claimant was "reasonably foreseeable" to the defendant. If the injury that befell the plaintiff was "reasonably foreseeable" to the defendant, then courts

---

[1] Whether or not Gables advised Ms. Long to submit repair requests via her counsel is not relevant to the closet door issue because she does not contend that she used her counsel to submit the closet door repair request.

will usually conclude that the defendant owed the plaintiff a duty to avoid causing
that injury; if the injury was not "reasonably foreseeable," then there was no duty.

*Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C.2011) (internal citations omitted).

Whether a duty exists is a question of law for the court; it is not a jury question.  *Findlay v.
CitiMortgage, Inc*., 813 F. Supp. 2d 108, 120 (D.D.C. 2011) (*citing Hedgepeth*).  The Amended
Complaint alleges no facts to indicate what the request for a routine repair stated about the closet
door, which would have made it foreseeable, to Gables, that the door posed a threat of falling off.
Moreover, foreseeability, which is the keystone of duty, is a question of law for this Court.

### D.   GABLES VIOLATED NO MUNICIPAL REGULATIONS

Plaintiff also argues that somehow, Gables violated statutory or administrative rules or
guidelines in conjunction with the door and the screen, and thus was negligent.  Opp. pp. 31-33.

With respect to the screen, Gables addressed that issue in its Memorandum in Support of
its Motion to Dismiss.  Specifically, in January, when Ms. Long's three year-old fell out the
window," the Municipal Regulations themselves did not require screens to be in place.  For this
reason (among others) Plaintiff's artful discussion of *Gould v. DeBeve*, 117 U.S. App. D.C. 36,
330 F.2d 826 (D.C. Cir. 1964), which involved an accident at a time when regulations required
screens, is meaningless.

Even if the accident in this case had occurred when the regulations required screens, they
specifically state the purpose of screens was to prevent insect intrusion.  D.C. Mun. Regs. tit. 14,
§806.3 ("Screens shall be maintained to prevent effectively the entrance of flies and mosquitoes
into the building.").  As stated in Gables' Motion (pp. 26-27) the majority rule is that screens are
intended to prevent insect intrusion, but not to prevent children from falling out of windows.
Gables violated no regulations with respect to the screen, which means that Municipal Regulations

cannot serve as a predicate to establish that Gables violated any duty supposedly owed to Plaintiff vis-à-vis the screen.  Plaintiff's arguments to the contrary cannot save their claim.

Finally, as is true of the allegations regarding the closet door, the Amended Complaint completely fails to describe what allegedly was wrong with the screen.  Certainly, the Amended Complaint says nothing to establish that whatever was wrong with the screen was a dangerous condition, or that its condition was anything other than a routine repair.  Likewise, Plaintiff alleges no facts to establish that it was foreseeable that, during the month of January (or during any month, for that matter), a broken or missing window screen would be the cause of a child falling out of a window, and thus fails to establish the element of duty.

As for the closet door, Plaintiff implies, but does not explain how it is that Gables supposedly was in violation of the Housing Code.  Plaintiff's Amended Complaint does not set forth a single fact to establish that the condition of the closest door violated Municipal Regulations that pertain to doors.  *See e.g.* D.C. Mun. Regs. tit. 14, § 705.  Instead, Plaintiff argues something of a *non sequitur* that by requiring written notice of a repair, Gables violated Title 14, section 301.1 of the District of Columbia Municipal Regulations ("DCMR") pertaining to implied warranties of habitability.  Plaintiff then piggybacks that argument with an argument that the DCMR requires "more than basic repairs..." and instead requires repairs "to make building healthy and safe…." Opp. p. 34.

Plaintiff borrowed her argument from *Clarke v. O'Connor*, 435 F.2d 104, 107 (D.C. Cir. 1970), which is easily distinguishable.  In *Clarke*, the D.C. Circuit followed precedent that held that municipal regulations "effectively overruled" prior law that landlords are not responsible for repairs of defects arising during the term of a lease, and instead required that landlords maintain habitability.  *Clarke v. O'Connor*, 140 U.S. App. D.C. 300, 305, 435 F.2d 104, 100 (D.C. Cir.

1970).  While the concept stated in *Clarke* is generally true, the facts from *Clarke* are simply not analogous, and the legal principles that it states are not ones that are at issue here.

In *Clarke*, a landlord purchased a window fan that was installed in a window between an interior room of the first floor of a house, and a screened in porch.  Because the fan had no protective grill on one side, and because the removable window screen that had once shielded the blades was not in place at the time of the accident, its blades were exposed on one side, and injured the face of a seven-year-old boy who was a guest (not a tenant) at the property.[2]  *Clarke v. O'Connor*, 140 U.S. App. D.C. 300, 303-304, 435 F.2d 104, 107-08 (D.C. Cir. 1970).  Because the injury in *Clarke* resulted from the landlord's affirmative action of installing a fan without a grill at the leased premises, reasonable care was the issue; notice and foreseeability/duty were not. The *Clarke* court explained:

> Having purchased a fan that had no protective device covering the blades on the side intended to face the exterior of the window, the appellee proceeded to direct its installation in a window located between two habitable areas of the same building.…  The question thus becomes whether the precautions taken, namely, the installation of a lightweight, easily removable window screen in front of the exposed fan blades amounted to reasonable care under the circumstances.  This question should have been submitted to the jury.

*Clarke*, 140 U.S. App. D.C. at 305-06, 435 F.2d at 108-09.  Reasonable care was also the key issue in *Youssef v. 3636 Corp.*, 777 A.2d 787 (D.C. 2001), which Plaintiff also cites.  However, reasonable care is not the issue at this juncture, in this case; foreseeability is.

In this case, the Amended Complaint alleges no facts to suggest that the closet door posed a safety issue that it was a "hazardous condition," or that that it was in any way foreseeable that the door was such that it would fall off onto Ms. Long's children or onto anyone else.  Also, unlike the case at bar, the landlord in *Clarke* <u>introduced</u> the dangerous condition by purchasing a fan

---

[2] Obviously, because fans are inherently dangerous, they require "protective devices" such as protective grills, closet doors in residential departments are not inherently dangerous and do not need special protective devices.

without a safety grill for installation at the leased premises.  In contrast, Plaintiffs have pleaded no

facts to articulate what the alleged dangerous condition of the closet door supposedly was, or what

brought it on.  *Iqbal*, 556 U.S. at 678.  *Res ipsa loquitor* will not salvage this negligence claim

because what few facts have been pleaded here do not address foreseeability at all.  This case

presents a failure of pleading, and is a far cry from a case that raises a jury question.

## VII.   PLAINTIFF'S CONTRACT CLAIM FAILS FOR WANT OF DAMAGES

Plaintiff relies upon *Wright v. Howard University*, 60 A.3d 749, 753-54 (D.C. 2013) to

argue that her contract claim does not fail for want to damages.  However, as Judge Friedman

pointed out in *Parr v. Ebrahimian*, 70 F. Supp. 3d 123 (D.D.C. 2014), with respect to contract

*Wright*, "focused on a different issue, namely, the accrual of a claim for breach of contract, not

whether damages caused by the breach is an element of such a claim." *Parr v. Ebrahimian*, 70 F.

Supp. 3d 123, 138 (D.D.C. 2014) (granting summary judgment holding that while Plaintiff was

not required to prove the *amount* of damages, she must establish that she actually was damaged,

and that the damage itself is not speculative).

Ms. Long claims breaches of contract based upon four incidents; two of which are related

to repairs, namely the closet door and the window screen incidents (*see e.g.*, Am. Compl. at ¶¶209,

211); and, two of which are related to the Metropolitan Police Department's accessing her

apartment, first on April 11, 2020 and second on April 24, 2020. (*Id.*, ¶¶201-204).

Ms. Long has the same problems as the Plaintiff did in *Parr, i.e.*, she has not articulated

any damages stemming from the alleged breaches of contract with respect to the April 11, 2020

and April 24, 2020 incidents, and, to the extent her contract claim encompasses the window screen

and closet door incident, it is duplicative of her negligence claim.  *Parr*, 70 F. Supp. 3d at 138.

*Parr*, 70 F. Supp. at 133 (explaining that at summary judgment holding that while Plaintiff was

not required to prove the *amount* of damages, she must establish that she actually was damaged, with some proof beyond mere speculation).

As far as the April 11, and April 24 incidents are concerned, there are no economic damages pleaded, which means these incidents cannot sustain a breach of contract claim.  In *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009), a landlord sued a tenant for breach of a settlement agreement between the parties which contained a confidentiality provision because the tenant filed a copy of the settlement agreement with a court filing.  The District of Columbia Court of Appeals explained that the Landlord's claim failed because it had no economic damages as a result of the breach:

> It is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm '[M]ere breach without proof of monetary loss is *injuria absque damno, i.e.*, a wrong which results in no loss or damage, and thus cannot sustain an action.  In other words, although adherence to the confidentiality provision was a significant obligation imposed on the tenants by the settlement agreement, the discernable consequences to the landlord of the tenants having attached a copy of the agreement to the motion were nil.'

*Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (internal citations omitted).

Ms. Long has pleaded no damages resulting from the alleged contract breaches.  Citing to paragraphs 83 and 88 of the Amended Complaint, the Opposition (p. 39) attempts to claim that the alleged breaches caused her to stay in hotels, but this is inaccurate.  Paragraph 83 alleges Ms. Long lost her quiet enjoyment of the premises, but it mentions nothing of being forced to stay at, and pay for a hotel.  And, while Paragraph 88 claims that Ms. Long stayed elsewhere due to harassment and hostile environment, she claims to have done so "to avoid…further intrusion by MPD."  Am. Compl. ¶88.  This claim of paragraph 88 is illogical because choosing (as she did) to stay elsewhere would not be a means of preventing additional MPD intrusions, even though there were none.

The four incidents that comprise Ms. Long's breach of lease claim did not cause her to stay elsewhere.  Simply put, Ms. Long did not allege that on April 11, 2021 and April 24, 2021, she left her apartment for a hotel *because* the police had come to her apartment.  In fact, Ms. Long does not claim to have gone to a hotel at all on either of those dates and  the Amended Complaint does not identify when she allegedly stayed at hotels, at all.  Consequently, there is no causal connection alleged between the MPD incidents and her election at a different time to go to a hotel. That is because there is no logical or temporal connection alleged to exist between the two.  Rather, Ms. Long's Amended Complaint explains that she went to a hotel at an unspecified time, "[b]ecause [she was] afraid of being evicted and forced back into the shelter system, this harassment has pushed her and her children to often sleep at a friend or family's residence, or occasionally at a hotel, rather than at their apartment at The Berkshire."  Am. Compl. ¶7.

## VIII.   AS A MATTER OF LAW, THE MPD's WELLNESS CHECK WAS AN EMERGENCY, AND WAS A PERMISSIBLE ENTRY UNDER THE LEASE

Regarding her trespass claim, Plaintiff argues that the Lease's use of the term "emergency" is ambiguous, and interpretation of ambiguous language is a question of fact.  Opp. p. 42. However, the Lease is not ambiguous just because Plaintiff says it is.

> [A] contract is ambiguous when, and only when, it is, or the provisions in controversy are, reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings, and it is not ambiguous where the court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends.' [But a] contract is not ambiguous simply because the parties disagree on its interpretation.

*Wharf, Inc. v. D.C.*, 133 F. Supp. 3d 29, 41 (D.D.C. 2015) (internal citations omitted).  "The question of whether a contract is ambiguous is one of law to be determined by the court."  *Wharf, Inc.*, 133 F. Supp. 3d at 41.

In the District of Columbia, a 911 call is, *by definition*, an "emergency," and there is nothing unclear or ambiguous about that concept.  The District of Columbia Code states: "The District's 911 call system shall be reserved exclusively for emergency calls."  D.C. Code Ann. § 1-327.56a (a).  The 911 emergency call system is sacrosanct, that false reports made using the 911 call system are criminal misdemeanors in the District of Columbia punishable by fines and imprisonment of up to 6 months.  D.C. Code Ann. § 22-1319 (a).

There is nothing ambiguous about the Lease's use of the term "emergency," and there is nothing ambiguous about Ms. Long's repeated use (thirteen times in all) of "911" in the Amended Complaint to describe the neighbor's calls to the police.  Thus, taking Ms. Long at her word: the police came and entered her apartment as a result of a 911 call.  By statutory definition, a 911 call is an "emergency call."  Therefore, each MPD entry into Ms. Long's apartment resulting from a 911 "emergency call" was in fact an emergency, and entry was, therefore, "privileged" under the Lease.  ECF No. 2, at ¶23(A).

Finally, Ms. Long's reliance on *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311 (D.D.C. 2011),[3] and *Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109, (D.D.C. 2018) is misplaced because those cases involved entry into premises where consent to entry was obtained by fraud, which is not alleged here.

## IX.   <u>CONCLUSION</u>

For the reasons articulated above and within Gables' Memorandum in Support of its Motion to Dismiss, Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted and must be dismissed as a result.   Pursuant to Rule 12(b)(6), Defendant Gables

---

[3] Like the plaintiff in *Council on Am.-Islamic Rels. Action Network, Inc.*, Mrs. Long has not alleged, and certainly cannot prove "actual diminution of value caused by the defendant's alleged interference…", so at best, she could only recover nominal damages.  *Council on Am.-Islamic Rels. Action Network, Inc.*, 793 F. Supp. 2d at 344-45.

Residential Services, Inc. respectfully moves this Court to dismiss Plaintiffs' Amended Complaint with prejudice, and grant all such further relief as may be just and proper.

Dated: September 23, 2021             Respectfully submitted,

**Gables Residential Services, Inc.**

_____/s/ Eric Pelletier_____
Eric Pelletier (D.C. Bar No. 454794)
Anders T. Sleight (D.C. Bar No. 1019232)
**Offit Kurman, P.A.**
7501 Wisconsin Avenue, Suite 1000W
Bethesda, Maryland 20814
Telephone: 240-507-1700; Fax: 240-507-1735
Email:  epelletier@offitkurman.com
        anders.sleight@offitkurman.com
*Counsel for Defendant*
*Gables Residential Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2021, a true copy of the foregoing *Reply Memorandum of Points and Authorities* was electronically filed through the Court's CM/ECF system, with a courtesy copy via email on counsel of record, who are reflected below.

Catherine Cone (catherine_cone@washlaw.org)
Brook Hill (brook_hill@washlaw.org)
**Washington Lawyers' Committee for Civil Rights and Urban Affairs**
*Counsel for Plaintiffs*

Brian D. Koosed (brian.koosed@klgates.com)
Amy J. Eldridge (amy.eldridge@klgates.com)
**K&L Gates LLP**
*Counsel for Plaintiffs*

Stephenson Schwinn (s.schwinn@jocs-law.com)
Maeghan M. Buckley (m.buckley@jocs-law.com)
**JORDAN COYNE LLP**
*Counsel for Defendant Berkshire Apartments, LLC*

_____/s/ Eric Pelletier_____
Eric Pelletier (D.C. Bar No. 454794)

4842-4992-0252, v. 1