**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                            )
**Dasha Long, M.L., and L.L.,**                )
                                                            )
_Plaintiffs,_                                          )
                                                            )
v.                                                          )          **Case No.  1:21-cv-00881-ACR**
                                                            )
**Gables Residential Services, Inc., et al.**   )
                                                            )
_Defendants._                                       )
_____)

**REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT**
**GABLES RESIDENTIAL SERVICES, INC.'S**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Eric Pelletier (D.C. Bar No. 454794)
Anders T. Sleight (D.C. Bar No. 1019232)
**Offit Kurman, P.A.**
7501 Wisconsin Avenue, Suite 1000W
Bethesda, Maryland 20814
Telephone: 240-507-1700
Fax: 240-507-1735
Email: epelletier@offitkurman.com
        anders.sleight@offitkurman.com
_Counsel for Defendant_
_Gables Residential Services, Inc._

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iii

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.    PLAINTIFFS' HOSTILE HOUSING ENVIRONMENT CLAIMS
FAIL BECAUSE THERE IS NO BASIS UPON WHICH GABLES
COULD LEGALLY CONTROL THE BEHAVIOR OF
THIRD-PARTY TENANTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

     A.    HUD REGULATIONS SUPPORT GABLES' POSITION. . . . . . . . . . . . . . . . . .2

     B.    *WETZEL* IS INAPPOSITE AND DISTINGUISHABLE. . . . . . . . . . . . . . . . . . .6

     C.    *FRANCIS* IS ANALOGOUS AND SHOULD GUIDE THE COURT. . . . . . . . . .7

III.   PLAINTIFFS' RETALIATION CLAIM FAILS BECAUSE
THERE IS NO ALLEGATION OF AN ADVERSE ACTION. . . . . . . . . . . . . . . . . . . . .9

IV.   PLAINTIFFS' FAMILIAL STATUS AND RACE DISRIMINATION
CLAIMS FAIL FOR WANT OF ALLEGATIONS OF DIFFERENTIAL
TREATMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

     A.    THE EXPRESS TERMS OF 42 U.S.C. §3604(A) AND
INTERPRETIVE REGULATIONS MAKE CLEAR
THAT PLAINTIFFS CANNOT STATE A CLAIM
FOR UNAVAILABILITY OF HOUSING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

     B.    THERE ARE NO ALLEGATIONS TO SUPPORT
PLAINTIFFS' CLAIM UNDER 42 U.S.C. §3604(B) . . . . . . . . . . . . . . . . . . . . .12

V.    PLAINTIFFS' CLAIM UNDER 42 U.S.C. §1981 FAILS
BECAUSE THE COMPLAINT DOES NOT SPECIFY
WHICH RIGHTS PLAINTIFF SEEKS TO ENFORCE
OR THE RACE OF THE ALLEGEDLY HARRASING NEIGHBOR. . . . . . . . . . . . . . 14

VI.   THE COURT SHOULD DISMISS THE NEGLIGENCE CLAIM. . . . . . . . . . . . . . . . 15

     A.    MS. LONG'S THREADBARE ALLEGATIONS OF
NEGLIGENCE DO NOT SATISFY *IQBAL* AND *TWOMBLY*. . . . . . . . . . . . . .15

     B.    ASSUMING ARGUENDO THAT ORAL REPAIR
REQUESTS WERE PERMISSABLE, DEFENDANTS
STILL HAD NO NOTICE OF A DANGEROUS CONDITION. . . . . . . . . . . . . .16

      C.     AS A MATTER OF LAW, GABLES OWED NO DUTY
TO PLAINTIFF BECAUSE IT WAS NOT FORESEEABLE
THAT THE CONDITION LEADING TO MS. LONG'S
ROUTINE CLOSET DOOR REPAIR WOULD LEAD TO AN INJURY. . . . . . 18

      D.     GABLES VIOLATED NO MUNICIPAL REGULATIONS. . . . . . . . . . . . . . . .18

VII.    PLAINTIFF'S CONTRACT CLAIM FAILS FOR WANT OF DAMAGES. . . . . . . . . . .21

VIII.   AS A MATTER OF LAW, THE MPD's WELLNESS CHECK
WAS AN EMERGENCY, AND WAS A PERMISSIBLE ENTRY
UNDER THE LEASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

IX.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

CASES                                                                              PAGE

*2922 Sherman Ave. Tenants' Ass'n v. District of Columbia*,
    370 U.S.App.D.C. 328, 444 F.3d 673, (D.C. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Akonji v. Unity Healthcare, Inc.*,
    517 F.Supp.2d 83 (D.D.C. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (U.S. May 18, 2009). . . . . . . .5, 15, 16, 21

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (U.S. May 21, 2007). . . . . . . . . . .5, 15, 16

*Bergbauer v. Mabus*,
    934 F.Supp.2d 55 (D.D.C. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Blatt v New York City Housing Authority*,
    123 A.D.2d 591, 506 N.Y.S.2d 877 (N.Y.A.D. 2 Dept., 1986). . . . . . . . . . . . . . . . . . . . . 8

*Clarke v. O'Connor*,
    140 U.S.App.D.C. 300, 435 F.2d 104 (D.C. Cir. 1970). . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Charles v. Home Depot, U.S.A., Inc.*,
    No. 16-CV-2054 (EGS), 2019 WL 95563 (D.D.C. Jan. 03, 2019). . . . . . . . . . . . . . . . . .16

*Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*,
    793 F.Supp.2d 311 (D.D.C. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Danzer v. Norden Sys., Inc.*,
    151 F.3d 50 (2d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Democracy Partners v. Project Veritas Action Fund*,
    285 F.Supp.3d 109 (D.D.C. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Domino's Pizza, Inc. v. McDonald*,
    546 U.S. 470, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (U.S. 2006). . . . . . . . . . . . . . . . . . . . .14

*Edstrom v St. Nicks Alliance Corp.*,
    149 N.Y.S.3d 26, 2021 N.Y. Slip Op. 03112 (N.Y.A.D. 1 Dept., 2021). . . . . . . . . . . . . .8

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Favourite v. 55 Halley Street, Inc.*,
    381 F.Supp.3d 266, 2019 WL 2226762 (S.D.N.Y. May 23, 2019). . . . . . . . . . . . . . . . . . 9

*Findlay v. CitiMortgage, Inc.*,
    813 F.Supp.2d 108, (D.D.C. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*\*Francis v. Kings Park Manor, Inc.*,
    992 F.3d 67, 78 (2d Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

*Galabya v. New York City Bd. of Educ.*,
    202 F.3d 636, (2nd Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Gill by Gill v. New York City Hous. Auth.*,
    519 N.Y.S.2d 364 (N.Y. App. Div. 1st Dept. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

*Gould v. DeBeve*,
    117 U.S.App.D.C. 360 (D.C.Cir. 1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n.*,
    388 F.3d 327 (7th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Hedgepeth v. Whitman Walker Clinic*,
    22 A.3d 789 (D.C. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Honce v. Vigil*,
    1 F.3d 1085 (10th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Kalashnikov v. Myfield Lane Homeowners' Assn., Inc.*,
    3:20CV1018(MPS), 2023 WL 1862763, at *10 (D. Conn. Feb. 9, 2023). . . . . . . . . . . . . 5

*Morton v. Kirkland*,
    558 A.2d 693 (D.C. May 24, 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8

*Myers v. D.C. Hous. Auth.*,
    20-CV-700 (APM), 2022 WL 3715795 at 5 (D.D.C. Aug. 29, 2022). . . . . . . . . . . . . . 4, 5

*Nanko Shipping, USA v. Alcoa, Inc.*,
    428 U.S.App.D.C. 87, 850 F.3d 461 (D.C. Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Parr v. Ebrahimian*,
    70 F.Supp.3d 123 (D.D.C. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21, 22

*Potomac Electric Power Company v. Washington Metropolitan Area Transit Authority*,
    No. 19-CV-2709 (DLF), 2020 WL 3429738 (D.D.C. June 22, 2020). . . . . . . . . . . . . . . .16

*Regional Economic Community Action Program, Inc. v. City of Middletown*,
  294 F.3d 35, (2d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Tsintolas Realty Co. v. Mendez*,
  984 A.2d 181 (D.C. Nov. 25, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Wetzel v. Glen St. Andrew Living Community, LLC*,
  901 F.3d 856, 859 (7th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 9

*Wharf, Inc. v. District of Columbia*,
  133 F.Supp.3d 29 (D.D.C. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Wright v. Howard University*,
  60 A.3d 749 (D.C. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Youssef v. 3636 Corp.*,
  777 A.2d 787 (D.C. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16, 21

## S<small>TATUTES</small>

42 U.S.C. §1981. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

42 U.S.C. §3604. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13, 14

42 U.S.C. §3617. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

D.C. Code §1-327.56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

D.C. Code §22-1319. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## R<small>EGULATIONS</small>

24 C.F.R. §100.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

24 C.F.R. §100.60. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

24 C.F.R. §100.65. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

D.C. Mun. Regs. tit. 14, §301. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

D.C. Mun. Regs. tit. 14, §705. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

D.C. Mun. Regs. tit. 14, §806.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

**O**THER

Fed. R. Civ. P. 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Housing Discrimination Law and Litigation* §20:5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1 Housing Discrim. Pr. Man. §2.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Defendant Gables Residential Services, Inc. ("Gables"), by counsel, respectfully submits this memorandum in reply to the opposition to Gables' Motion to Dismiss filed by Plaintiffs Dasha Long ("Ms. Long") and her minor children M.L. and L.L. (collectively, "Plaintiffs").

## I.    <u>INTRODUCTION</u>

Plaintiffs filed a thirteen-count lawsuit against a property management company (Gables) and their landlord the Berkshire Apartments, LLC (the "Berkshire") based on sundry claims of discrimination and negligence perpetuated by third parties.  Rather than attempting to explain why they believe their claims are legally adequate, Plaintiffs' Opposition to Gables' Motion to Dismiss ("Opposition") devotes its first eight pages to reiterating, summarizing, realleging (and at times, conveniently recharacterizing) the allegations of their Amended Complaint.  However, this needless redundancy does not add vitality to Plaintiffs' claims, but merely underscores that this matter involves a few incidents, and this lawsuit is overkill.

Plaintiffs' civil rights claims are based on a flawed premise.  That is, Plaintiffs repeatedly assert through the Amended Complaint and their Opposition that Gables was vested with power to control the spontaneous and unpredictable behavior of third-party tenants acting within the confines of their own homes.  The parties' lease reveals that Gables holds no power or effective means by which to control tenant behavior or intervene in disputes between tenants.  Furthermore, Plaintiffs have cited no controlling legal authority, statute, or regulation that would require Gables to investigate or resolve disputes between and among tenants within the building it manages.  The law is to the contrary.  *See Morton v. Kirkland*, 558 A.2d 693, 695 (D.C. 1989) ("A landlord is not obliged to institute eviction proceedings whenever a tenant accuses another tenant of harassment.").  *See also Gill by Gill v. New York City Hous. Auth.*, 519 N.Y.S.2d 364, 370 (N.Y. App. Div. 1st Dept. 1987) (reversing and dismissing trial court verdict for plaintiff and finding that a landlord cannot control and prevent unprecedented acts of a mentally ill tenant).

II.     **PLAINTIFFS' HOSTILE HOUSING ENVIRONMENT CLAIMS FAIL BECAUSE THERE IS NO BASIS UPON WHICH GABLES COULD LEGALLY CONTROL THE BEHAVIOR OF THIRD-PARTY TENANTS**

A.     **HUD REGULATIONS SUPPORT GABLES' POSITION**

Plaintiffs' Opposition relies on regulations promulgated by the Department of Housing and Urban Development ("HUD") in attempting to impute liability to Gables based on actions of third-party tenants.  Opp. at 11.  Plaintiffs claim HUD's regulations are entitled to *Chevron* deference from this Court.  Opp. at 10-11.  Plaintiffs are correct; however, the HUD regulations actually support Gables' position because there are no allegations or legal basis from which this Court could conclude that Gables had power to control the behavior of other, allegedly abusive residents or that a pervasive hostile housing environment existed because of Ms. Long's neighbors.

According to HUD, the determination of whether a hostile environment harassment exists depends upon the totality of the circumstances.  24 C.F.R. §100.60(a)(2)(i).  HUD cautions that "[f]actors to be considered to determine whether hostile environment harassment exists include, but are not limited to, the nature of the conduct, the context in which the incident(s) occurred, the severity, scope, frequency, duration, and location of the conduct, and the relationships of the persons involved."  24 C.F.R. §100.60(a)(2)(i)(A).  While neither psychological nor physical harm are required to prove a hostile environment, the unwelcome conduct must be "sufficiently severe or pervasive as to create a hostile environment", which is determined based upon the "perspective of a reasonable person in the aggrieved person's position."  24 C.F.R. §100.60(a)(2)(i)(B)-(C).

The Housing Discrimination Practice Manual recognizes that "many courts have relied on employment cases to analyze whether the alleged harassment is sufficiently severe."  §2.7.  Discriminatory Housing Practices Under Title VIII – Harassment, 1 Housing Discrim. Pr. Man. §2.7.  *Bergbauer v. Mabus*, 934 F.Supp.2d 55 (D.D.C. 2013) is instructive on this point.  The *Bergbaue*r plaintiff asserted a sexual harassment hostile work environment claim based upon

inappropriate and sexually suggestive comments made to her by a co-worker and incidents of uninvited physical touching and kissing by a separate co-worker.  *Bergbauer v. Mabus*, 934 F.Supp.2d 55, 64-65 (D.D.C. 2013).  *Id.* at 64-65.  The Court held that the plaintiff had not "demonstrated severe or pervasive conduct sufficient to constitute a hostile work environment." *Id.* at 76.  The *Bergbauer* Court reasoned that the plaintiff needed to show harassment so "severe or pervasive as to 'constructive[ly] alter ... the terms or conditions of employment…" and noted that even claims of physical contact and sexual advances may not be sufficient to meet the "demanding legal standard for a hostile work environment'  *Id.* at 76-77.  *See also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (observing that "offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"); *Akonji v. Unity Healthcare, Inc.*, 517 F.Supp.2d 83, 98 (D.D.C. 2007) (granting summary judgment and dismissing plaintiff's allegations of hostile work environment, including allegations of inappropriate physical touching and kissing and sexual commentary, as not "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment").

Applying the hostile work environment framework to this case, it is clear that the allegations of the Amended Complaint do not establish a hostile or offensive housing environment. For example, Plaintiffs complain of Ms. Long's neighbor's 911 calls leading to police visits to Ms. Long's apartment, but do not allege that Gables knew who was making the calls or why, or that it had forewarning of the calls.  Am. Compl. ¶¶120-121.  Plaintiffs also allege that a property manager "threatened Ms. Long with a 30-day notice to quit," but do not allege that such a notice was ever issued.  Am. Compl. ¶122.  Plaintiffs' Amended Complaint does not allege facts that rise to the level of demonstrating a severe and pervasive hostile housing environment, but rather allege

occurrences that are, at most, inconvenient or bothersome.  For these reasons, the Amended Complaint fails to state a hostile housing environment claim.

Moreover, there is no basis for liability against Gables under the HUD regulations. Pursuant to 24 C.F.R. §100.7, direct liability against Gables could lie only if Gables knew or should have known of discriminatory conduct caused by a third-party, which conduct Gables had the power to correct.   24 C.F.R. §100.7(a)(1)(iii).   Of course, Plaintiffs cite a portion of the aforementioned HUD regulation but fail to quote it in full.  The full regulation states as follows:

> Failing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it. *The power to take prompt action to correct and end a discriminatory housing practice by a third-party depends upon the extent of the person's control or any other legal responsibility the person may have with respect to the conduct of such third-party.*

24 C.F.R. §100.7(a)(iii) (emphasis supplied).

There are no specific allegations within the Complaint from which this Court could infer that Gables has the power or means to control third parties.  Moreover, Plaintiffs have not cited any legal authority that imposes upon Gables a duty or the power to control the behavior of third parties.  Instead, Plaintiffs merely allege, in conclusory fashion in one phrase, that Gables "had the authority" to "put an end to the neighbor's unreasonable actions towards Ms. Long."  Am. Compl. ¶35.  To support their claims predicated on these regulations, Plaintiffs must allege what power, if any, Gables allegedly possesses to control third parties.  24 C.F.R. §100.7(a)(iii).  Yet Plaintiffs make no such allegations besides the naked assertion in paragraph 35 of the Amended Complaint.

Plaintiffs cite *Myers v. D.C. Hous. Auth.*, but that case is distinguishable because it involved significant acts of harassment by an agent employed by the landlord.  *Myers v. D.C. Hous. Auth.*, 20-CV-700 (APM), 2022 WL 3715795 at 5 (D.D.C. Aug. 29, 2022).  The *Myers* Plaintiffs alleged the onsite resident manager who was employed by the D.C. Housing Authority ("DCHA")

engaged in a repeating pattern of overt sexual harassment over a period of seven years.  *Id.* at 5.

The key distinction between the case at bar and *Myers* was the existence of an agency relationship

between the resident manager and DCHA, which generated a factual dispute as to whether the

resident manager's apparent authority existed and prevented summary judgment.  *Id.* at 6.  By

contrast, there is no agency relationship whatsoever between Gables and Ms. Long's harassing

neighbor.  Furthermore, the neighbor's three 911 calls were not severe and certainly not pervasive,

especially when compared to the *Myers* resident manger's behavior.    Thus, *Myers* is

distinguishable.

      Since there is no allegation of an agency relationship, Plaintiffs' are left to hang their hostile

housing environment claims on a rusty hook – a neighbor's stary remarks and 911 calls.  Am.

Compl. ¶¶33-34.  However, courts have routinely held that "'stray remarks' alone do not support

a discrimination suit."  *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998).  *See also*

*Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993) (finding a landlord's eccentric behavior not

actionable under the FHA and observing that "[h]ostile environment claims usually involve a long-

lasting pattern of highly offensive behavior."); *Kalashnikov v. Myfield Lane Homeowners' Assn.,*

*Inc.*, 3:20CV1018(MPS), 2023 WL 1862763, at *10 (D. Conn. Feb. 9, 2023) ("[b]ehavior that is

rude or mean-spirited, but not discriminatory, does not fall within the ambit of the FHA").

      Simply put, the HUD regulations actually support Gables' position because there are no

allegations of a continuous, severe, long-lasting pattern of offensive behavior by a party whom

Gables could legally control.  This Court is not required to accept as true "'naked assertion[s]'

devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting

*Twombly*, 550 U.S. at 557).  Accordingly, this Court should determine that Plaintiffs' hostile

housing environment claims fail to state a claim under the FHA and the HUD regulations.

### B.   _WETZEL_ IS INAPPOSITE AND DISTINGUISHABLE

Plaintiffs' Opposition relies heavily on the Seventh Circuit's decision in _Wetzel v. Glen St. Andrew Living Community, LLC_ for the proposition that Gables should be held liable for the allegedly discriminatory conduct of third-party tenants.  However, _Wetzel_ bears significant factual distinctions – specifically, the _Wetzel_ plaintiff was a resident of a residential community for older adults – and it does not aid Plaintiffs' cause.  _Wetzel v. Glen St. Andrew Living Community, LLC_, 901 F.3d 856, 859 (7th Cir. 2018).  In _Wetzel_, the Defendant residential community exercised significant control over the Plaintiff and the alleged harassers, including serving all of them three meals per day in a common, central location.  _Id._  The Plaintiff alleged that fellow residents verbally abused and berated her based upon her sexuality and gender, and physically abused her in common areas.  _Id._ at 860.  She also alleged specific, direct acts of retaliation allegedly committed by the landlord, such as "barr[ing] her from the lobby except to get coffee … halt[ing] her cleaning services, thus depriving her of access to areas specifically protected in the Agreement."  _Id._  Because the acts of discrimination and physical abuse in _Wetzel_ occurred in common areas under the landlord's control, the Seventh Circuit reversed the district court's decision to grant defendants' motion to dismiss.  _Id._ at 868.  Importantly, the Seventh Circuit declined to base its ruling on HUD's rules, as plaintiff had sought, because it determined "HUD's rule mirrors the scope of employee liability under Title VII for employee-on-employee harassment," and "there are salient differences between Title VII and the FHA."  _Id._ at 866.

Unlike _Wetzel_, the case at bar does not involve an older adults residential community. There are no allegations that most or many Gables residents require the assistance of walkers, wheelchairs and scooters or are substantially reliant upon Gables for basic living needs.  Unlike the subject case, the _Wetzel_ landlord had direct and indirect control over its tenants, similar to a school or a prison.  _Wetzel_ at 859-861.  By contrast, the Berkshire is an "upscale" "multi-unit

residential building," and not an older adults community where tenants require and receive extensive support and assistance, and ancillary services such as cleaning.  Am. Compl. ¶¶3, 14(b).  The relationship between Gables and its tenants is strictly an arms-length relationship.  Am. Compl. ¶¶2-4.  Moreover, *Wetzel's* alleged acts of discrimination and harassment occurred principally in common areas, over which the landlord exercised control, while the alleged wrongful actions in the subject case took place within Plaintiffs' apartment, or through the walls, or via phone calls to the police, all of which were allegedly perpetuated by Plaintiffs' neighbor, *from inside the neighbor's apartment*.  Am. Compl. ¶¶32, 34, 36.  Also, unlike the case at bar, in *Wetzel* the landlord's own staff engaged in discriminatory actions themselves, and even slapped the *Wetzel* Plaintiff across the face*.  Wetzel*, 901 F.3d at 860.  Even the *Wetzel* court acknowledged that "[h]ad the management defendants done nothing but listen, we might have a more limited case."  *Id.*

Finally, and perhaps most important of all, the lease in *Wetzel* allowed the landlord to evict any tenant who "engages in acts or omissions that constitute a direct threat to the health and safety of other individuals" or who "engage[s] in any activity that [landlord] determines unreasonably interferes with the peaceful use and enjoyment of the community by other tenants."  *Wetzel*, 901 F.3d at 865.  The lease that Gables entered with Ms. Long reserves no such powers to Gables.  *See* ECF No. 2, ¶27 "Default by Tenant" and "Eviction."

For these reasons, the Plaintiffs' reliance on the Seventh Circuit's decision in *Wetzel* is misplaced.  This Court should not follow the *Wetzel* Court's reasoning because of the substantial differences between the allegations in that case and those present in the case at bar.

### C.   *FRANCIS* IS ANALOGOUS AND SHOULD GUIDE THE COURT

In *Francis v. Kings Park Manor, Inc.*, the Second Circuit specifically analyzed and distinguished *Wetzel* in determining that a landlord could not be held liable for the discriminatory actions of third-party tenants.  *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 78 (2d Cir. 2021).

In support of its holding, the *Francis* Court reasoned that there were no allegations the landlord had an "unusual degree of control over the premises and tenants, or actively facilitated or compounded harm" to the plaintiff that would justify the imposition of liability, as was true in *Wetzel*. *Id.* Furthermore, the Second Circuit explained that although a tenant's breach of the terms of a lease might allow a landlord to terminate a lease, it does not confer upon the landlord any ability to control a tenant. *Id. See also Morton, supra.*, 558 A.2d at 695 (recognizing limited duty to control tenant actions against other tenants); *Blatt v. New York City Hous. Auth.*, 506 N.Y.S.2d 877 (N.Y. App. Div. 2d Dept. 1986) (finding no duty for a landlord to protect a tenant "from the criminal acts of yet another tenant, since it cannot be said that the landlord had the ability or a reasonable opportunity to control.").

Following the Second Circuit's decision in *Francis*, New York's Supreme Court, Appellate Division, affirmed the dismissal of a tenant's FHA and state law discrimination claims similar to those raised by Plaintiffs in this case. *Edstrom v. St. Nicks All. Corp.*, 149 N.Y.S.3d 26, 27 (N.Y. App. Div. 1st Dept. 2021). Akin to the case before this Court, the Plaintiff in *Edstrom* alleged that "his landlord failed to respond to reports of sexual-orientation and race-based harassment by a fellow tenant." *Id.* The *Edstrom* Court agreed with the Second Circuit's observation in *Francis* that "[t]he typical powers of a landlord over a tenant – such as the power to evict – do not establish the substantial control necessary to state a deliberate indifference claim under the FHA…", particularly because a landlord-tenant relationship in question was merely a "typical[] arm's length relationship." *Id.* From this, the *Edstrom* court dismissed the plaintiff's FHA claim because it lacked any basis from which the Court could infer that the landlord "had substantial control over the alleged harasser." *Id.*

In this case, Plaintiffs allege they "were subjected to unwelcome, pervasive, and severe conduct from their next-door neighbor." Opp. at 15. However, there are no allegations within the Amended Complaint from which this Court could conclude or infer that Gables possesses any ability to control the behavior of tenants within the confines of their own homes. In contrast, the harassing behavior in *Wetzel* was perpetuated by third-party tenants in the common areas and by the landlord itself. *Wetzel* at 859. The Court should follow *Francis* because it is factually analogous, it is well-reasoned, and, because it is an *en banc* decision (reversing a panel decision, no less), it has undergone more rigorous analysis than the panel decision in *Wetzel*.

## III. PLAINTIFFS' RETALIATION CLAIM FAILS BECAUSE THERE IS NO ALLEGATION OF AN ADVERSE ACTION

With respect to Plaintiffs' retaliation claims under the FHA, the parties agree that Plaintiffs must plead sufficient facts to show Plaintiffs were: (1) engaged in protected activity; (2) Gables took adverse action against the Plaintiffs; and (3) that a causal connection exists between the Plaintiffs' protected activity and the adverse action, "*i.e.*, that a retaliatory motive played a part" in the adverse action. *Regl. Econ. Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 54 (2d Cir. 2002). Discriminatory animus is an essential element of every retaliation claim predicated on 42 U.S.C. §3617. *Favourite v. 55 Halley St., Inc.*, 381 F.Supp.3d 266, 280 (S.D.N.Y. 2019) (dismissing a retaliation claim lacking evidence of intentional discrimination against the plaintiff).

Plaintiffs' retaliation claims fail because there are insufficient allegations from which this Court can conclude Gables subjected Plaintiffs to adverse action. An adverse action "must be sufficiently harmful to deter a reasonable person in the plaintiff's circumstances from engaging in the protected activity." *Housing Discrimination Law and Litigation* §20:5.

9

The Amended Complaint and Opposition in this matter fail to specify what, if any, adverse action Gables perpetuated against Plaintiffs allegedly in retaliation for their retention of counsel. For instance, Plaintiffs allege Gables retaliated against Ms. Long by "requiring her, *at certain times*, to seek the assistance of her counsel to place non-emergency repair and other services requests." Am. Compl. ¶76 (emphasis supplied).  But Plaintiffs admit that not all repair requests were required to be submitted with the assistance of counsel.  In addition, the Amended Complaint alleges Ms. Long contacted her counsel in May 2020 (¶¶70-71) and July 2020 (¶75) but submitted her own repair requests in October, 2020 and January, 2021.  Am. Compl. ¶¶77, 79.  And, particularly because Ms. Long engaged *two sets* of lawyers to represent her, Gables' decision to involve its own lawyers to receive repair requests from Ms. Long's lawyers can hardly be said to be an adverse action motivated by illegal animus.  Am. Compl. ¶¶73, 75.  In other instances, Ms. Long admits she spoke to Gables regarding repair issues and requests and was not required to route her communications through counsel. Am. Compl. ¶¶77, 79.  Finally, while Ms. Long contends that her oral repair requests were not "timely" addressed, there are no facts pleaded to identify when repair requests were actually made, or how much time passed before the request was addressed before an incident resulted.  Am. Compl. ¶¶77, 79.

Courts addressing the sufficiency of adverse action in the context of employment retaliation claims have opined that a "plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment.  To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)  Plaintiffs do not allege any materially adverse changes in the terms and conditions of their housing by using attorneys to submit occasional non-emergency

repair requests.  As a result, there are simply no specific factual allegations that rise to the level of adverse action sufficient to support a retaliation claim under 42 U.S.C. §3617.  As such, this Court must dismiss Plaintiffs' retaliation claim under 42 U.S.C. §3617 for failure to state a claim.

## IV.   PLAINTIFFS' FAMILIAL STATUS AND RACE DISRIMINATION CLAIMS FAIL FOR WANT OF ALLEGATIONS OF DIFFERENTIAL TREATMENT

By the very terms of the Amended Complaint, Plaintiffs cannot establish they were denied housing or received different housing conditions on the basis of their race or familial status. Plaintiffs concede they remained residents of the Berkshire until at least June 2021, well after the alleged racist remarks of Ms. Long's neighbor and 911 calls.  Am. Compl. ¶¶7, 33, 34, 11, 87; Opp. at 4.  Moreover, there are no allegations that Plaintiffs were treated differently or offered different conditions, as is required to state a claim under 42 U.S.C. §3604(a).

### A.   THE EXPRESS TERMS OF 42 U.S.C. §3604(A) AND INTERPRETIVE REGULATIONS MAKE CLEAR THAT PLAINTIFFS CANNOT STATE A CLAIM FOR UNAVAILABILITY OF HOUSING

Pursuant to 42 U.S.C. §3604(a), it is unlawful for a landlord to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. §3604(a).  In this case, it is undisputed that Ms. Long was offered and accepted the rental of an apartment at the Berkshire, and Ms. Long resided at the Berkshire from April 9, 2020 until at least the filing of the Amended Complaint on June 6, 2021.  Am. Compl. ¶¶9, 11, 20, 87.  There are no allegations in the Complaint that Ms. Long was not offered an apartment or that Gables made her apartment unavailable or otherwise denied her the apartment.

Ms. Long remained in the Berkshire, despite the supposedly hostile housing environment, until well past her notice of intent to vacate, which she delivered in November 2020.  Am. Compl. ¶¶9, 11, 85-87.  Apart from the terms of 42 U.S.C. §3604(a) itself, the regulations interpreting that

section of the FHA offer no help to Plaintiffs because according to the Amended Complaint, they had not vacated the Berkshire.  Am. Compl. ¶¶85-87.  Subsection (b)(7) of the regulation interpreting 42 U.S.C. §3604(a) states: "Subjecting a person to harassment because of race, color, religion, sex, handicap, familial status, or national origin that *causes the person to vacate* a dwelling or abandon efforts to secure the dwelling."  24 C.F.R. §100.60(b)(7) (emphasis supplied). Yet, Plaintiffs make clear that, by the time this action was filed on June 6, 2021, Ms. Long had not vacated the Berkshire, even though she intended to do so as early as November 2020.  ECF No. 1. For the foregoing reasons, and pursuant to the express terms of 42 U.S.C. §3604(a) and the HUD regulations interpreting that section of the FHA, Ms. Long cannot state a claim against Gables for making housing unavailable.

Plaintiffs also do not allege that Gables or other tenants asked Plaintiffs to find other housing or to move out.  *See e.g. 2922 Sherman Ave. Tenants' Ass'n v. D.C.*, 444 F.3d 673, 685 (D.C. Cir. 2006) (finding Defendant made housing unavailable by warning tenants that building was unfit for habitation and advising them to seek other housing).  Instead, Plaintiffs allege they voluntarily left the building on a few occasions, the dates of which are unknown, and subsequently returned to the Berkshire, where Plaintiffs continued to reside until at least June 6, 2021.  Am. Compl. ¶¶7, 11, 88, 89.  The suggestion that Gables made Ms. Long's apartment unavailable to her is unsupported by the express terms of Plaintiffs' own Amended Complaint.  Plaintiffs' allegations fail to establish a viable claim for unavailability of housing under the FHA.

**B.     THERE ARE NO ALLEGATIONS TO SUPPORT PLAINTIFFS' CLAIM UNDER 42 U.S.C. §3604(B)**

Pursuant to 42 U.S.C. §3604(b), it is unlawful for a landlord to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status,

or national origin."  However, there are no allegations in the Amended Complaint that Gables denied Plaintiffs access to common areas of the Berkshire or any facilities on the basis of race or familial status.  Moreover, there are no allegations that Gables refused to make repairs to Ms. Long's apartment on the basis of her race or familial status.

Ms. Long claims that Gables facilitated a neighbor's harassment of Plaintiffs or refused to curtail the neighbor's action, but (as discussed *supra*) Plaintiffs do not specifically allege what power Gables had to curtail the behavior of the neighbor, either under the terms of the lease or District of Columbia law.

Plaintiffs' reliance upon the HUD regulation interpreting 42 U.S.C. §3604(b), is unavailing.  24 C.F.R. §100.65(b)(7) specifies that prohibited actions under 42 U.S.C. §3604(b) include, "[s]ubjecting a person to harassment because of race, color, religion, sex, handicap, familial status, or national origin that has the effect of imposing different terms, conditions, or privileges relating to the sale or rental of a dwelling or denying or limiting services or facilities in connection with the sale or rental of a dwelling."  24 C.F.R. §100.65.  There are no allegations, however, that Gables *itself* harassed Plaintiffs because of their race or familial status.

Finally, Plaintiffs have not pleaded any facts by which this Court could impute the behavior of Ms. Long's neighbor onto Gables, either by an agency theory or otherwise.  The Seventh Circuit has previously held that alleged discriminatory actions of third parties cannot form the basis for a claim for relief under 42 U.S.C. §3604.  *Halprin v. Prairie Single Fam. Homes of Dearborn Park Ass'n*, 388 F.3d 327, 329 (7th Cir. 2004) (homeowner failed to state a §3604 claim against homeowners' association based on harassing acts of other property owners).

13

For the foregoing reasons, and pursuant to the express terms of 42 U.S.C. §3604(b) and the HUD regulations interpreting that section of the FHA, Plaintiffs do not state a claim against Gables for discriminatory terms, conditions or privileges in housing.

**V.   PLAINTIFFS' CLAIM UNDER 42 U.S.C. §1981 FAILS BECAUSE THE COMPLAINT DOES NOT SPECIFY WHICH RIGHTS PLAINTIFF SEEKS TO ENFORCE OR THE RACE OF THE ALLEGEDLY HARRASING NEIGHBOR**

Gables does not contest Plaintiffs' recitation of the purpose of 42 U.S.C. §1981.  It is worth noting, however, that claims asserted under 42 U.S.C. §1981 are subject to the same pleading standards as "the familiar *McDonnell Douglas* rubric for alleging a *prima facie* case of purposeful employment discrimination."  *Nanko Ship.*, *USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017). In order to properly state a claim under 42 U.S.C. §1981, a plaintiff must allege he or she "has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 470 (2006).  Yet, Ms. Long does not specifically allege which rights under the lease she seeks to enforce.  Rather, Ms. Long vaguely claims that Gables took no steps to "ensure Ms. Long's enjoyment of the rights provided in her Lease."  Am. Compl. ¶142.  These allegations are not sufficient to state a claim under 42 U.S.C. §1981.

Second, while Plaintiffs rely heavily on *Nanko Shipping* to claim that Plaintiffs have met their pleading burden under 42 U.S.C. §1981, *Nanko Shipping* is distinguishable.  In *Nanko*, the plaintiff alleged that the defendant, aware of the plaintiff's owner's race, "treated the company he owns and operates less favorably than similarly situated white-owned companies."  *Id.*  However, as stated in Gables' opening Memorandum in support of its Motion to Dismiss, Ms. Long has not pleaded any facts that would show Gables itself treated Ms. Long less favorably than similarly situated tenants of different races.  Most importantly, the harassing neighbor's race is not identified or alleged anywhere within the Amended Complaint.  Plaintiffs would have this Court *presume* that the neighbor is not African-American because the neighbor allegedly made a racist remark

about Ms. Long's race to a Gables representative.  Am. Compl. ¶33.  There are simply no allegations specifying the neighbor's race and this Court cannot infer that Gables treated Ms. Long differently based on her race because the Amended Complaint does not give the Court any basis upon which it could conclude or infer that Ms. Long and the allegedly harassing neighbor are different races.

For the foregoing reasons, Ms. Long fails to state a claim for relief under 42 U.S.C. §1981 and this Court must dismiss Count V of the Amended Complaint accordingly.

## VI.   THE COURT SHOULD DISMISS THE NEGLIGENCE CLAIM

### A.   MS. LONG'S THREADBARE ALLEGATIONS OF NEGLIGENCE DO NOT SATISFY *IQBAL* AND *TWOMBLY*

When the Opposition asserts that Gables' arguments about the negligence claim raise jury question(s) (Opp. at 33, 35-36), it puts the cart before the horse.  Plaintiffs' problem is a failure to plead facts, rather than a dispute over those facts.  That is, the Amended Complaint fails to state a claim for negligence that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although "detailed factual allegations" are not required, a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *id.*, and must "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

To state a facially plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  This is not a "probability requirement," but adequate pleading requires more than a "sheer possibility that a defendant has acted unlawfully."  *Id.*  A complaint alleging "facts [that] are 'merely consistent with' a defendant's liability ... 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

In support of Plaintiffs' argument that that they have plead facts sufficient to raise jury questions on their negligence claim, Plaintiffs cite many (typically older) District of Columbia Court of Appeals cases, (Opp. at 35-36) which precede, and therefore do not apply *Iqbal* and *Twombly*. Under *Iqbal* and *Twombly*, "[t]hreadbare recitals of the elements" of *res ipsa loquitur*, "supported by mere conclusory statements," cannot suffice to meet [*Iqbal* and *Twombly's*] requirement[s]." *Potomac Elec. Power Co. v. Washington Metro. Area Transit Auth.*, No. 19-CV-2709 (DLF), 2020 WL 3429738, at *2 (D.D.C. June 22, 2020). As Gables' opening Memorandum (pp. 24-26) argued, bald allegations that something bad allegedly happened, or that negligence is "in the air," or in the "abstract" do not suffice to state a negligence claim, and Plaintiff cannot invoke *res ipsa loquitor* to salvage it.

### B.   ASSUMING ARGUENDO THAT ORAL REPAIR REQUESTS WERE PERMISSIBLE, DEFENDANTS STILL HAD NO NOTICE OF A DANGEROUS CONDITION

In *Charles v. Home Depot, U.S.A., Inc.*, No. 16-CV-2054 (EGS), 2019 WL 95563, at *2 (D.D.C. Jan. 3, 2019), another judge of this Court explained the legal implications regarding lack of notice of a "dangerous condition":

> the burden is on the plaintiff to prove that the defendant was negligent 'either in creating a *dangerous condition* or in allowing one to continue without correction and that this negligence was the proximate cause of the injuries. Moreover, when liability is predicated upon the existence of a *dangerous condition*, as here, it is necessary to show that the party against whom negligence is claimed *had actual notice of the dangerous condition* or that the condition had existed for such length of time that, in the exercise of reasonable care, its existence should have become known and corrected.

*Charles v. Home Depot, U.S.A., Inc.*, No. 16-CV-2054 (EGS), 2019 WL 95563, at *2 (D.D.C. Jan. 3, 2019) (internal citations omitted) (emphasis added). *See also Youssef v. 3636 Corp.*, 777 A.2d 787, 794 (D.C. 2001) (stating that the law of the District Columbia requires that a landlord have

notice, actual or constructive, of a hazardous condition and that a landlord be afforded a reasonable opportunity to correct it).  Plaintiffs' case suffers from the same flaw.

Here, Plaintiffs do not claim that the door was a "dangerous" or "hazardous" condition, or that it was one that Gables either created, or allowed to persist.  To the contrary, they identify the door and their request for repair as an "example" of an item she describes as "routine" in nature. Am. Compl. ¶¶8, 73, 77-78.  Plaintiffs take this tack to avoid the Lease requirement that her repair requests be in writing, and in doing so, point to the "Gables Policies & Regulations" which states, "*routine* repair requests may be submitted to the office in person, via phone, email or Gables Gateway…."  ECF No. 2, p. 49 (emphasis added).

Even assuming for sake of argument that an oral repair request was permissible, with respect to the closet door, the Amended Complaint is completely nondescript and does not state any facts indicating that there was anything about the condition of the door that was dangerous or hazardous, or that Plaintiffs advised Gables that the door's condition was hazardous, or likely to fall off the track.[1]   The arguments in Plaintiffs' Opposition (p.34) that now attempt to recharacterize the door as a "hazardous condition" do not rectify this failing of the Amended Complaint.  Instead, by Plaintiffs' choosing, the Amended Complaint is conspicuously vague with respect to whatever allegedly was wrong with the door, and equally vague on the timing between her alleged oral repair request and the moment when the door (apparently spontaneously) fell off the track and onto Ms. Long's eleven-month-old child.

---

[1] Whether or not Gables advised Ms. Long to submit repair requests via her counsel is not relevant to the closet door issue because she does not contend that she used her counsel to submit the closet door repair request.

17

### C.     AS A MATTER OF LAW, GABLES OWED NO DUTY TO PLAINTIFF BECAUSE IT WAS NOT FORESEEABLE THAT THE CONDITION LEADING TO MS. LONG'S ROUTINE CLOSET DOOR REPAIR WOULD LEAD TO AN INJURY

As currently pleaded, this case involves a "routine" (*See* Am. Compl. ¶¶8, 73, 81) repair request for a closet door that allegedly fell on Ms. Long's infant child for reasons that the Amended Complaint does not specify.   Plaintiffs' negligence claim is essentially one based on *res ipsa loquitor* because there is no allegation in the Amended Complaint that a dangerous condition existed, or even any description whatsoever regarding what supposedly was wrong with the door. Regardless, the question is whether the Amended Complaint states any facts to indicate whether it was foreseeable that the failure to make a routine closet door repair within the same week it was supposedly reported (or, possibly on the same day it was reported, *see* Am. Compl. ¶¶77-78) would lead to the risk at issue, *i.e.*, the door spontaneously falling on someone in the apartment.

> In general, courts rely on the concept of "foreseeability" to determine whether the defendant owed a duty to the claimant in a negligence action and examine whether the risk to the claimant was "reasonably foreseeable" to the defendant. If the injury that befell the plaintiff was "reasonably foreseeable" to the defendant, then courts will usually conclude that the defendant owed the plaintiff a duty to avoid causing that injury; if the injury was not "reasonably foreseeable," then there was no duty.

*Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C.2011) (internal citations omitted). Whether a duty exists is a question of law for the court; it is not a jury question.   *Findlay v. CitiMortgage, Inc*., 813 F.Supp.2d 108, 120 (D.D.C. 2011) (*citing Hedgepeth*).   The Amended Complaint alleges no facts to indicate what the request for a routine repair stated about the closet door, which would have made it foreseeable, to Gables, that the door posed a threat of falling off. Moreover, foreseeability, which is the keystone of duty, is a question of law for this Court.

### D.     GABLES VIOLATED NO MUNICIPAL REGULATIONS

Plaintiff also argues that somehow, Gables violated statutory or administrative rules or guidelines in conjunction with the door and the screen, and thus was negligent.   Opp. at 32-35.

With respect to the screen, Gables addressed that issue in its Memorandum in Support of its Motion to Dismiss.  Specifically, in January, when Ms. Long's three year-old fell out the window, the Municipal Regulations did not require screens to be in place.  For this reason (among others), Plaintiffs' artful discussion of *Gould v. DeBeve*, 117 U.S.App.D.C. 36, 330 F.2d 826 (D.C. Cir. 1964), which involved an accident at a time when regulations required screens, is meaningless.

Even if the accident in this case had occurred when the regulations required screens, they specifically state the purpose of screens was to prevent insect intrusion.  D.C. Mun. Regs. tit. 14, §806.3 ("Screens shall be maintained to prevent effectively the entrance of flies and mosquitoes into the building.").  As stated in Gables' Motion (pp. 26-27) the majority rule is that screens are intended to prevent insect intrusion, but not to prevent children from falling out of windows. Gables violated no regulations with respect to the screen, which means that Municipal Regulations cannot serve as a predicate to establish that Gables violated any duty supposedly owed to Plaintiffs vis-à-vis the screen.  Plaintiffs' arguments to the contrary cannot save their claim.

Finally, as is true of the allegations regarding the closet door, the Amended Complaint completely fails to describe what allegedly was wrong with the screen.  Certainly, the Amended Complaint says nothing to establish that whatever was wrong with the screen was a dangerous condition, or that its condition was anything other than a routine repair.  Likewise, Plaintiffs allege no facts to establish that it was foreseeable that, during the month of January (or during any month, for that matter), a broken or missing window screen would be the cause of a child falling out of a window, and thus fails to establish the element of duty.

As for the closet door, Plaintiffs imply, but do not explain how it is that Gables supposedly was in violation of the Housing Code.  Plaintiffs' Amended Complaint does not set forth a single fact to establish that the condition of the closest door violated Municipal Regulations that pertain

19

to doors.  *See e.g.* D.C. Mun. Regs. tit. 14, §705.  Instead, Plaintiffs argues something of a *non sequitur* that by requiring written notice of a repair, Gables violated D.C. Mun. Regs. tit. 14, §301 pertaining to implied warranties of habitability.  Plaintiffs then piggyback that argument with an argument that D.C.'s housing regulations require "more than basic repairs..." and instead requires repairs "to make building healthy and safe…."  Opp. p. 36.

Plaintiffs borrowed their argument from *Clarke v. O'Connor*, 435 F.2d 104, 107 (D.C. Cir. 1970), which is easily distinguishable.  In *Clarke*, the D.C. Circuit followed precedent holding that municipal regulations "effectively overruled" prior law that landlords are not responsible for repairs of defects arising during the term of a lease, and instead required that landlords maintain habitability.  *Clarke v. O'Connor*, 140 U.S.App.D.C. 300, 305, 435 F.2d 104, 100 (D.C. Cir. 1970).  While the concept stated in *Clarke* is generally true, the facts from *Clarke* are simply not analogous, and the legal principles that it states are not ones that are at issue here.

In *Clarke*, a landlord purchased a window fan that was installed in a window between an interior room of the first floor of a house, and a screened in porch.  *Clarke v. O'Connor*, 435 F.2d 104, 106 (D.C. Cir. 1970).  Because the fan had no protective grill on one side, and because the removable window screen that had once shielded the blades was not in place at the time of the accident, its blades were exposed on one side, and injured the face of a seven-year-old boy who was a guest (not a tenant) at the property.[2]  *Id.* at 107-08.  Because the injury in *Clarke* resulted from the landlord's action of installing a fan without a grill at the leased premises, reasonable care was the issue; notice and foreseeability/duty were not.  *Id.* at 108.  The *Clarke* court explained:

> Having purchased a fan that had no protective device covering the blades on the
> side intended to face the exterior of the window, the appellee proceeded to direct
> its installation in a window located between two habitable areas of the same
> building.…  The question thus becomes whether the precautions taken, namely, the

---

[2] Obviously, because fans are inherently dangerous, they require "protective devices" such as protective grills, closet doors in residential departments are not inherently dangerous and do not need special protective devices.

installation of a lightweight, easily removable window screen in front of the exposed fan blades amounted to reasonable care under the circumstances.  This question should have been submitted to the jury.

*Clarke*, 140 U.S.App.D.C. at 305-06, 435 F.2d at 108-09.  Reasonable care was also the key issue in *Youssef v. 3636 Corp.*, 777 A.2d 787 (D.C. 2001), which Plaintiff also cites.  However, reasonable care is not the issue at this juncture, in this case; foreseeability is.

In this case, the Amended Complaint alleges no facts to suggest that the closet door posed a safety issue, that it was a "hazardous condition," or that that it was in any way foreseeable that the door would fall off onto Ms. Long's children or onto anyone else.  Also, unlike the case at bar, the landlord in *Clarke* <u>introduced</u> the dangerous condition by purchasing a fan without a safety grill for installation at the leased premises.  *Clarke* at 106. In contrast, Plaintiffs have pleaded no facts to articulate the allegedly dangerous condition of the closet door, or what brought it on.  *Iqbal*, 556 U.S. at 678.  *Res ipsa loquitor* will not salvage this negligence claim because what few facts have been pleaded here do not address foreseeability at all.  This case presents a failure of pleading and is a far cry from a case that raises a jury question.

## VII.   <u>PLAINTIFF'S CONTRACT CLAIM FAILS FOR WANT OF DAMAGES</u>

Ms. Long relies upon *Wright v. Howard University*, 60 A.3d 749, 753-54 (D.C. 2013) to argue that her contract claim does not fail for want to damages.  However, as Judge Friedman pointed out in *Parr v. Ebrahimian*, 70 F.Supp.3d 123 (D.D.C. 2014), with respect to contract *Wright*, "focused on a different issue, namely, the accrual of a claim for breach of contract, not whether damages caused by the breach is an element of such a claim."  *Parr v. Ebrahimian*, 70 F.Supp.3d 123, 138 (D.D.C. 2014) (granting summary judgment and holding that while Plaintiff was not required to prove the *amount* of damages, she must establish that she actually was damaged, and that the damage itself is not speculative).

21

Ms. Long claims breaches of contract based upon four incidents; two of which are related to repairs, namely the closet door and the window screen incidents (*see e.g.*, Am. Compl. at ¶¶209, 211); and, two of which are related to the Metropolitan Police Department's accessing her apartment, first on April 11, 2020 and second on April 24, 2020. (*Id.*, ¶¶201-204).

Ms. Long has the same problems as the Plaintiff did in *Parr, i.e.*, she has not articulated any damages stemming from the alleged breaches of contract with respect to the April 11, 2020 and April 24, 2020 incidents, and, to the extent her contract claim encompasses the window screen and closet door incident, it is duplicative of her negligence claim. *Parr*, 70 F.Supp.3d at 138. *Parr*, 70 F.Supp.3d at 133 (explaining that at summary judgment stage, while Plaintiff was not required to prove the *amount* of damages, she must establish that she actually was damaged, with some proof beyond mere speculation).

As far as the April 11, and April 24 incidents are concerned, there are no economic damages pleaded, which means these incidents cannot support a breach of contract claim. In *Tsintolas Realty Co. v. Mendez*, a landlord sued a tenant for breach of a settlement agreement between the parties which contained a confidentiality provision because the tenant filed a copy of the settlement agreement with a court filing. *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). The District of Columbia Court of Appeals explained the Landlord's claim failed because it had no money damages as a result of the breach:

> It is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm '[M]ere breach without proof of monetary loss is *injuria absque damno, i.e.*, a wrong which results in no loss or damage, and thus cannot sustain an action.   In other words, although adherence to the confidentiality provision was a significant obligation imposed on the tenants by the settlement agreement, the discernable consequences to the landlord of the tenants having attached a copy of the agreement to the motion were nil.'

*Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (internal citations omitted).

Ms. Long has pleaded no damages resulting from the alleged contract breaches.  Citing to ¶¶83 and 88 of the Amended Complaint, the Opposition (p. 41) attempts to claim that the alleged breaches caused her to stay in hotels, but this is inaccurate.  Paragraph 83 of the Amended Complaint alleges Ms. Long lost quiet enjoyment of the premises, but it mentions nothing of being forced to stay at, and pay for a hotel.  And, while paragraph 88 claims that Ms. Long stayed elsewhere due to harassment and hostile environment, she claims to have done so "to avoid…further intrusion by MPD."  Am. Compl. ¶88.  Ms. Long's claim is illogical because choosing (as she did) to stay elsewhere would not be a means of preventing additional MPD intrusions, even though there were none.

The four incidents that comprise Ms. Long's breach of lease claim did not cause her to stay elsewhere.  Simply put, Ms. Long did not allege that on April 11, 2020 and April 24, 2020, she left her apartment for a hotel *because* the police had come to her apartment.  In fact, Ms. Long does not claim to have gone to a hotel at all on either of those dates and the Amended Complaint, and she does not identify when she allegedly stayed at hotels, at all.  Consequently, there is no causal connection alleged between the MPD incidents and her election at a different time to go to a hotel.  That is because there is no logical or temporal connection alleged to exist between the two.  Rather, Ms. Long's Amended Complaint explains that she went to a hotel at an unspecified time, "[b]ecause [she was] afraid of being evicted and forced back into the shelter system, this harassment has pushed her and her children to often sleep at a friend or family's residence, or occasionally at a hotel, rather than at their apartment at The Berkshire."  Am. Compl. ¶7.

## VIII. AS A MATTER OF LAW, THE MPD's WELLNESS CHECK WAS AN EMERGENCY, AND WAS A PERMISSIBLE ENTRY UNDER THE LEASE

Regarding her trespass claim, Plaintiff argues that the Lease's use of the term "emergency" is ambiguous, and interpretation of ambiguous language is a question of fact.  Opp. at 42. However, the Lease is not ambiguous just because Plaintiff says it is.

> [A] contract is ambiguous when, and only when, it is, or the provisions in controversy are, reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings, and it is not ambiguous where the court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends.' [But a] contract is not ambiguous simply because the parties disagree on its interpretation.

*Wharf, Inc. v. D.C.*, 133 F.Supp.3d 29, 41 (D.D.C. 2015) (internal citations omitted).  "The question of whether a contract is ambiguous is one of law to be determined by the court."  *Wharf, Inc.*, 133 F.Supp.3d at 41.

In the District of Columbia, a 911 call is, *by definition*, an "emergency," and there is nothing ambiguous about that concept.  The District of Columbia Code states: "The District's 911 call system shall be reserved exclusively for emergency calls."  D.C. Code Ann. §1-327.56(a). False reports made using the 911 call system are criminal misdemeanors in the District of Columbia punishable by fines and imprisonment of up to 6 months.  D.C. Code § 22-1319(a).

There is nothing ambiguous about the Lease's use of the term "emergency," and there is nothing ambiguous about Ms. Long's repeated use (thirteen times in all) of "911" in the Amended Complaint to describe the neighbor's calls to the police.  Thus, taking Ms. Long at her word: the police came and entered her apartment as a result of a 911 call.  By statutory definition, a 911 call is an "emergency call."  Therefore, each MPD entry into Ms. Long's apartment resulting from a 911 "emergency call" was in fact an emergency, and entry was, therefore, "privileged" under the Lease.  ECF No. 2, at ¶23(A).

24

Finally, Ms. Long's reliance on *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 793 F.Supp.2d 311 (D.D.C. 2011),[3] and *Democracy Partners v. Project Veritas Action Fund*, 285 F.Supp.3d 109, (D.D.C. 2018) is misplaced because those cases involved entry into premises where consent to entry was obtained by fraud, which is not alleged here.

## IX.    CONCLUSION

For the reasons articulated above and within Gables' Memorandum in Support of its Motion to Dismiss, Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted and must be dismissed as a result.   Pursuant to Rule 12(b)(6), Defendant Gables Residential Services, Inc. respectfully moves this Court to dismiss Plaintiffs' Amended Complaint with prejudice, and grant all such further relief as may be just and proper.

Dated: June 30, 2023                   Respectfully submitted,

**Gables Residential Services, Inc.**

/s/ Eric Pelletier
Eric Pelletier (D.C. Bar No. 454794)
Anders T. Sleight (D.C. Bar No. 1019232)
**Offit Kurman, P.A.**
7501 Wisconsin Avenue, Suite 1000W
Bethesda, Maryland 20814
Telephone: 240-507-1700; Fax: 240-507-1735
Email: epelletier@offitkurman.com
             anders.sleight@offitkurman.com
*Counsel for Defendant Gables Residential Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2023, a true copy of the foregoing was electronically filed through the Court's CM/ECF system, which will then send an electronic Notice of Filing to all counsel of record.

/s/ Eric Pelletier
Eric Pelletier (D.C. Bar No. 454794)

4860-7869-7581, v. 1

---

[3] Ms. Long has not alleged "actual diminution of value caused by the defendant's alleged interference…", which limits her recovery to, at best, nominal damages.  *Council on Am.-Islamic Rels. Action Network, Inc.*, at 344-45.